**In re R.R.**

**Appeal of R.R.**

**In re H.L.**

**Appeal of H.L.**

Superior Court of Pennsylvania.

Argued Oct. 1, 2012.
Filed Oct. 29, 2012.

Riya S. Shah, Philadelphia, for appellants.

---

4. Based on this conclusion, we need not consider Father's other two issues as they are moot.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, participating party.

BEFORE: BENDER, J., BOWES, J. and DONOHUE, J.

OPINION BY BENDER, J.

In this consolidated matter,[1] R.R. and H.L. (collectively "Appellants") appeal from the orders issued by the juvenile section of the Court of Common Pleas of Allegheny County that denied both R.R.'s and H.L.'s petitions to expunge their juvenile records. For the reasons stated below, we affirm.[2]

We begin by setting forth the juvenile court's statement of the facts and the procedural history relating to H.L.'s case:

H.L. was born [i]n September [of] 1992; he is 19½ years old. In August of 2005, H.L. was charged with sexual offenses in two delinquency petitions. At Caselog Number T139326, H.L. was charged with Rape, Sexual Assault and Indecent Assault; at Caselog Number T138075 H.L. was charged with Involuntary Deviate Sexual Intercourse (4 counts), Sexual Assault (2 counts), and Indecent Assault (4 counts). On October 24, 2005, pursuant to [ ] plea agreements H.L. admitted to one count of Indecent Assault at each of the petitions and the remaining charges were withdrawn by the attorney for the Commonwealth. I found that H.L. was a delinquent child in need of treatment, supervision and rehabilitation and deferred disposition with permission to place him in sex offender treatment at Auberle or Harborcreek Youth Services. H.L. was subsequently placed at Harborcreek Youth Services. At the time of the adjudication and disposition, H.L. was 13 years old.

On August 23, 2005, at the approximate time that the delinquency petitions were filed, Children Youth and Family Services (CYF) filed a petition for dependency. The dependency petition alleged that H.L. was dependent because his sisters were the victims of the sexual offenses to which he admitted and H.L.'s parents and the agency felt that it was inappropriate for him to return home. On October 24, 2005, I also adjudicated H.L. dependent. H.L. completed sex offender treatment at Harborcreek Youth Services on March 19, 2007 and was placed at Auberle Group Home. On December 10, 2007, H.L. was placed on probation, but remained in placement at Auberle through CYF. On August 18, 2008, H.L. was released from probation and his delinquency case was closed. H.L. continued to remain under that supervision of CYF and in placement.

Until the time of the close of H.L.'s delinquency case, I held joint placement and permanency review hearings every ninety days. When H.L. reached the age of 18, he agreed to remain under the supervision of Children Youth and Families (CYF) and the court. He is now 19 years old and is residing at Wyotech

1. By order dated March 20, 2012, upon consideration of H.L.'s and R.R.'s motions, this Court consolidated these cases for purposes of briefing and argument. We now address the issues raised in this single, consolidated appeal.

2. In its opinions, the juvenile court raised the question as to whether these cases should be considered children's fast track appeals. Since R.R. and H.L. are seeking expungement of their delinquency records, a category that does not fall within the list of children's fast track matters, see I.O.P. 65.14, we agree with the juvenile court's characterization that these appeals are not children's fact track cases. However, we will attempt to follow the timeframe set out for that type of case nevertheless.

Vocational School in Blairsville, where he receives automotive training. He received financial assistance and other supports from CYF. His case is reviewed every 90 days by Hearing Officer James Alter. Since his delinquency case was closed in August of 2008, H.L. has not been arrested, adjudicated delinquent, or convicted of a crime.

On November 2, 2011, H.L. filed a Petition for Expungement of his juvenile delinquency records. A hearing on the petition to expungement [sic] was held on January 23, 2012. On January 30, 2012, I entered an order denying the request to expunge the juvenile record, as the District Attorney did not consent to the expungement of the record.

On February 27, 2012, [H.L.] filed a Notice of Appeal of the January 30, 2012 order denying expungement of his juvenile delinquency record. Appellant identified this case as a Children's Fast Track case and filed a Concise Statement of Matters Complained with the Notice of Appeal.

Juvenile Court Opinion (J.C.O. re H.L.), 4/17/12, at 1–2 (footnote omitted).

Next, we set forth the juvenile court's *factual recitation and procedural history* concerning R.R.'s case:

R.R. was born [i]n March [of] 1991; he is 21 years old. R.R. was adjudicated dependent in 2003. In 2003, R.R. was charged in a juvenile petition at Caselog Number T127654 with Rape, Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault and Statutory Sexual Assault. On June 24, 2004, pursuant to a plea agreement, R.R. admitted to one count of Aggravated Indecent Assault and entered treatment through Juvenile Probation. R.R. remained under the supervision of Juvenile Probation and the court until his case through juvenile probation was closed on Febru-

ary 1, 2011. Until the time of the close of his delinquency case, I held joint placement and permanency review hearings every ninety days. After R.R.'s delinquency case was closed, R.R., who was then 19 years old, agreed to remain under the supervision of Children Youth and Families (CYF) and the court. I continued to review his case every 90 days, until his case was closed on November 29, 2011.

On October 20, 2011, R.R. filed a Petition for Expungement of his juvenile delinquency records. A hearing on the petition to expungement [sic] was scheduled for November 29, 2011[,] to coincide with his dependency permanency hearing. After a hearing in open court, I entered an order closing R.R.'s dependency case. I also entered an order denying the request to expunge the juvenile record at Caselog Number T127654, as the District Attorney did not consent to the expungement of this record.

On December 27, 2011, [R.R.] filed a Notice of Appeal of the November 29, 2011 order denying expungement of his juvenile delinquency record at Caselog Number T127654. Appellant identified this case as a Children's Fast Track case and filed a Concise Statement of Matters Complained with the Notice of Appeal.

Juvenile Court Opinion (J.C.O. re R.R.), 4/17/12, 1–2 (footnotes omitted).

The juvenile court's opinions in both cases explain that because 18 Pa.C.S. § 9123(a)(4), which is the applicable section of the Criminal History Record Information Act ("CHRIA"), requires the consent of the Commonwealth to grant expungement, it is compelled to deny both Appellants' petitions. However, the court acknowledges that if the Commonwealth's consents were not required, it would have

granted both petitions because it believed that expungement would serve the interests of the public and the juvenile.

In this appeal, Appellants assert the following two overarching arguments for our review:

I. Section 9123(a)(4) of the [CHRIA] is unconstitutional on its face and as applied to the extent it permits the denial of expungement based solely upon the Commonwealth's refusal to consent, and where no reason or basis for the refusal to consent is either offered or required.

II. Allowing the prosecutor to unilaterally block a petition for expungement when all other statutory criteria are met contravenes the purposes of Pennsylvania's juvenile act.

Appellants' brief at 12, 23.

Appellants sought expungement of their juvenile records pursuant to section 9123(a)(4) of CHRIA, which provides that:

(a) Expungement of juvenile records.—Notwithstanding the provisions of section 9105 (relating to other criminal justice information) and except upon cause shown, expungement of records of juvenile delinquency cases wherever kept or retained shall occur after 30 days' notice to the district attorney, whenever the court upon its motion or upon the motion of a child or the parents or guardian finds:

. . . .

(4) the individual is 18 years of age or older, the attorney for the Commonwealth consents to the expungement and a court orders the expungement after giving consideration to the following factors:

(i) the type of offense;

(ii) the individual's age, history of employment, criminal activity and drug or alcohol problems;

(iii) adverse consequences that the individual may suffer if the records are not expunged; and

(iv) whether retention of the record is required for purposes of protection of the public safety.

18 Pa.C.S. § 9123(a)(4) (emphasis added).

Appellants first claim that their due process rights were violated when their expungement requests were denied despite their having satisfactorily completed the requirements imposed by the juvenile justice system, *i.e.*, they completed all treatment and conditions. Specifically, Appellants argue that this case is essentially one involving the interpretation and application of section 9123(a)(4), taking into consideration the intention of the General Assembly and the remedial nature of CHRIA. Moreover, Appellants emphasize that expungements are questions of due process and that the hearing held on the matter at issue must be "appropriate to the nature of the case." Appellant's brief at 15 (quoting *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Appellants also contend that the statute is stripped of meaning if the Commonwealth is allowed to unilaterally withhold consent without showing cause why expungement should not be granted. *See* Appellants' brief at 16.[3]

Additionally, Appellants rely on Juvenile Court Rule 170(E) that was promulgated

---

**3.** We note that in their brief, Appellants contend that the Commonwealth provided no reasons for refusing to consent to the expungements. However, at argument, Appellants' attorney acknowledged that at the hearing the Commonwealth provided reasons for refusing to consent, but that the reasons given were not specifically related to each juvenile, *i.e.*, the reasons only referenced the seriousness of the offenses and the length of rehabilitation.

by the Pennsylvania Supreme Court, and provides that:

> **E. Hearing.** Unless the attorney for the Commonwealth consents to expunging the records, the court shall schedule and conduct a hearing, and thereafter grant or deny the motion."

Based upon this rule, Appellants contend that when the Commonwealth does not consent, the parties are to present argument directed at the expungement issue at a hearing. Thereafter, the court must consider the factors listed in section 9123(a)(4)(i)-(iv) and make a final decision whether to grant or deny the expungement petition.

Appellants next contend that "an unfettered, unreviewable prosecutorial veto of a petition for expungement is invalid because it upsets the balance between the coordinate branches of government[,]" Appellants' brief at 22, under the separation of powers doctrine. Essentially, Appellants argue that prosecutors, as part of the executive branch of the government, have a charging function that gives them discretion as to whether to file charges, what charges, and against whom, but that "courts and legislatures [are the branches of government that] routinely make determinations regarding what situations merit expungement." *Id.* To support this proposition, Appellants refer to the intent of CHRIA, which "is to encourage and mandate expungement in situations where the statutory criteria are met unless specific reasons can be presented to show why expungement is not proper." *Id.* (citing *In the Interest of Jacobs,* 334 Pa.Super. 613, 483 A.2d 907, 909 (1984); *In the Interest of A.B.,* 987 A.2d 769, 780 (Pa.Super.2009)). Thus, Appellants contend that if the Commonwealth's refusal to consent stands, the court is powerless and the intent of the statute is meaningless. *Id.* at 23.

Appellants also highlight "collateral consequences" suffered by young people who have been adjudicated delinquent. *Id.* at 25 (quoting *Jacobs,* 483 A.2d at 909) (stating, "there was always an elusive stigma attached to an adjudication of delinquency . . . which the expungement act sought to eliminate"). In particular, Appellants note that these consequences may impede opportunities to obtain housing, complete their education, find employment and/or may have an adverse effect on any future judicial proceedings. Thus, Appellants contend that "delaying expungement undermines the rehabilitative function of the juvenile court and decreases the likelihood that these youth will become the productive members of society envisioned by the Juvenile Act." *Id.* at 29–30.

In responding to these arguments, the Commonwealth first asserts that reasons for refusing to consent to the expungement were provided by the prosecution and are contained in the notes of testimony from each juvenile's hearing. The Commonwealth also contends that Appellants' argument ignores the legislative history of section 9123(a)(4), which preceded the passage of the amendment in 1995. The Commonwealth points out that prior to the amendment "neither of the [A]ppellants would have been eligible to seek expungement at the time they did, since prior to the amendment a juvenile wishing to expunge a delinquency record had to have been discharged for 5 years and free of adjudications or convictions, or else **21** years of age." Commonwealth's brief at 8 (emphasis in original). Then, the Commonwealth explains that "[t]he amendment lowered the age to 18 years for those not discharged for 5 years and added the consent of the attorney for the Commonwealth as the gate keeping function before a court could consider the expunction request." *Id.* The Commonwealth also suggests that Juvenile Court Rule 170(E)

does not conflict with section 9123 because the comment to the Rule "lets litigants know that there are certain instances where records may not be ripe for expungement." *Id.* at 16. Furthermore, the Commonwealth suggests that both Appellants here "have the statutory right to have a trial court consider expunging their juvenile delinquency records after they have stayed conviction-free for 5 years." *Id.* (citing 18 Pa.C.S. § 9123(a)(3)).[4]

The Commonwealth also discusses Appellants' constitutional argument, noting that there is a "presumption that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth" and that "the party challenging a statute's constitutionality bears a heavy burden of persuasion." *Id.* at 13 (quoting *Commonwealth v. Ludwig,* 583 Pa. 6, 874 A.2d 623, 628 (2005)). As an example of a situation that the Commonwealth contends is similar to the matter presented here, it identifies the "grant [of] immunity in exchange for testimony even when the witness prefers not to testify and desires to invoke the protection against compelled testimony provided by ... the Pennsylvania constitution." *Id.* The legislature gave authority to the executive branch as opposed to the judiciary, "denying the courts any right to insist on immunity for witnesses[.]" *Id.* at 14 (quoting *Commonwealth v. Doolin,* 24 A.3d 998, 1003 (Pa.Super.2011) (stating that the decision to grant immunity rests within the executive branch and courts have no power except at the request of the prosecutor)). Similarly, the Commonwealth asserts that section 9123(a)(4), which gives the Commonwealth the authority to deny consent, is an alternate procedure to section 9123(a)(3), which provides to the judiciary the authority to grant expungement requests without the Commonwealth's consent.

As recognized above, this is "[a] challenge to the court's interpretation and application of a statute [and, thus,] raises a question of law." *A.B.,* 987 A.2d at 773 (citing *Commonwealth v. Williams,* 871 A.2d 254, 262 (Pa.Super.2005)). Also, as noted previously, this matter concerns the interpretation and application of section 9123(a)(4) of CHRIA, which governs juvenile record expungements. "As with all questions of law, the appellate standard of review is de novo and the appellate scope of review is plenary." *Id.* (quoting *In re Wilson,* 879 A.2d 199, 214 (Pa.Super.2005) (*en banc* )). In *A.B.,* a case that deals with the doctrines of statutory construction regarding section 9123(a)(3) of CHRIA, our court observed that the polestar of statutory construction is to determine the intent of the legislature and to give effect to all provisions of a statute, if possible. *See A.B.* (citing 1 Pa.C.S. § 1921(a)). We are also guided by the following:

> When interpreting a statute, the court must give plain meaning to the words of the statute. It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute. Moreover, we presume the legislature did not intend an absurd or unreasonable result.

*A.B.,* 987 A.2d at 774 (quoting *In re R.D.R.,* 876 A.2d 1009, 1016 (Pa.Su-

---

4. Subsection 9123(a)(3) requires expungement of juvenile records when:

   (3) five years have elapsed since the final discharge of the person from commitment, placement, probation or any other disposition and referral and since such final dis-

   charge, the person has not been convicted of a felony, misdemeanor or adjudicated delinquent and no proceeding is pending seeking such conviction or adjudication; or....

per.2005)). These concepts have been effectively codified in the Statutory Construction Act, which provides the following:

### § 1921. Legislative intent controls

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921.

In *A.B.*, this Court explains the intent behind the passage of CHRIA as it relates to juveniles, stating:

The purpose of [CHRIA] is to provide an opportunity for children who crash upon the reef of criminal behavior to leave behind the damaging effect of such collision upon a showing that they had exercised sufficient restraint as to reasonably assure the authorities that total redemption was justified. [CHRIA] gave the delinquent and dependent child something they never before had. Although the intent and promise of the juvenile justice movement in this State and Country since the Act of April 23, 1903, P.L. 274 was declared constitutional in *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905), was to insulate the child from the harshness of the criminal law and to provide treatment and rehabilitation instead of punishment, there was always an elusive stigma attached to an adjudication of delinquency and/or dependency, which the expungement act sought to eliminate. The balance clearly proposed by the legislature was to give the child this additional benefit, but only if deserving, for there is an equal consideration of protection of public safety by having the record of the child available if his chronic behavior and course of conduct presage adult criminal behavior.

*Id.* (quoting *Jacobs*, 483 A.2d at 909 (emphasis omitted)).

In the instant case, the juvenile court determined that the language of the statute is clear, not ambiguous, and that the requirement that the prosecutor give consent did not render the statute unconstitutional. Specifically, the court explained that the statute "does not violate [an appellant's] rights to procedural due process, because the statute does not preclude expungement, it only precludes his right to obtain expungement prior to five years after discharge unless the attorney for the Commonwealth consents." J.C.O. re H.L. at 6; J.C.O. re R.R. at 6. The court further explained that:

[E]ven if the attorney for the Commonwealth consents, expungement is not automatic as the statute requires the court to hold a hearing and to consider the factors delineated in 9123(a)(4). This

statute is no different then [sic] the many mandatory sentencing statutes, which give the prosecuting attorneys the power and discretion to seek or not seek mandatory sentences and take away the discretion of the court in what many believe is the traditional and most important role of the judge—fashioning sentence and disposition.

Similarly, I do not agree with [A]ppellant's position that the statute, on its face[,] is unconstitutional. Specifically, [A]ppellant purports that the statute permits the denial of a petition for expungement of an individual who meets all other statutory criteria simply based upon the Commonwealth's refusal to grant consent without reason; and that this statutory structure creates a scheme that is fundamentally unfair, violating all principles of due process in juvenile matters. While 9123(a)(4) does permit the denial of a petition for expungement based upon the Commonwealth's refusal to consent to the expungement, [section] 9123(1)(3) clearly allows the court to grant the expungement without the consent of the Commonwealth. Additionally, in this case I find that the Commonwealth's refusal to consent, although I did not agree with their position, was not arbitrary or without reason.

*Id.* at 6–7.

Although we generally agree with the juvenile court's explanation as to the interpretation and application of section 9123(a)(4), we recognize some ambiguity, which is highlighted by the different interpretations presented in the parties' arguments. Therefore, we must examine the legislative intent evinced by the following

discussion found in the House Legislative Journal, 2/28/95, at 173–175: [5]

Mr. PRESTON. Thank you very much, Mr. Speaker.

My amendment 0885 basically takes the final consent rights from the local district attorney or the Attorney General as far as his option to be able to override a decision for a judge who may be recommending that a record be expunged.

I have done this particularly because I do not believe that a district attorney, depending on the time and the position the district attorney may be in office, should institute what I feel is politics, whether he is up for election or not. What I want to be able to do is give the authority to the judge to be able to make this decision. I do not think that it should be in the purview of a local district attorney to be able to override a judge's decision. There are only one or two other small instances where this may be the case.

So basically what I am trying to do is keep the authority within the court system and not be able to give an elected politician per se, as a district attorney, a chance to override a judge's decision.

I would ask for an affirmative vote.

. . . .

Mr. PICCOLA. Thank you, Mr. Speaker.

I would urge a negative note on the Preston amendment.

First of all, I would point out to the members of the House that if the juvenile remains crime free for a period of 5 years, the right to expungement is left solely to the court, as the gentleman

---

**5.** At the time the legislature was amending section 9123 of CHRIA, and specifically with regard to subsection (a)(4), Mr. Preston sought to strike out the following language: "the attorney of the Commonwealth consents to the expungement," which became the subject of a lengthy debate.

would have it. What we are suggesting in this bill is that if an individual who has not had that 5–year period elapse after they had been adjudicated delinquent and if they wish to have their records expunged, that the only way that can be done or even considered by the court is if the district attorney of that county approves or consents.

. . . .

Mr. PICCOLA. The reason we are doing that is because the district attorney, as the chief law enforcement officer in the county, elected by the people of your particular county, is charged with the responsibility of helping to insure public safety, and these records may be valuable for law enforcement purposes. And so if a record is to be expunged before that period of time in which a 5–year timeframe elapses in which the person is crime free, we feel, I feel, and the sponsors of this bill feel that it is entirely appropriate that the chief law enforcement officer in the county put his or her stamp of approval on that petition.

We leave the door open. We have reduced the age, as you know, to 18 for those juveniles who may have an opportunity to go into the armed services at a younger age than 21, but we feel that even in that case, a district attorney should review that particular record and, before that record is expunged, have the opportunity to say no, we need that information on the record for legitimate law enforcement purposes.

It is strictly a question of public safety, and I urge that the House reject the gentleman's amendment.

. . . .

Ms. MANDERINO. Thank you, Mr. Speaker.

Mr. Speaker, I rise to support the Preston amendment.

. . . .

But to go further and to include an absolute consent for the attorney for the Commonwealth is in essence giving the district attorney a veto power over a judge's discretion. So if you are at all concerned about keeping the discretion where at least I would argue that it belongs, with the judge to make the final determination, I would urge you to vote "yes" on the Preston amendment.

. . . .

Mr. MASLAND. Thank you, Mr. Speaker.

I rise to oppose the Preston amendment, and I will try to answer some of the concerns that have been raised by Ms. Manderino and possibly Mr. Preston.

I think it is important to not just look at paragraph (4) in isolation. You really have to look at subparagraph (4) in conjunction with paragraph (3). That is the key thing.

In paragraph (3), there are three things that have to happen in order to have an expungement: You have to have 5 years elapse without any problems; the person has not been convicted of a felony, or 5 years elapse and no conviction of a felony; or no proceedings pending. That is the difference between (3) and (4). Paragraph (4) is an automatic expungement without that lapse of time, without further conviction, and I think for that reason alone it is important for us to allow the D.A. to have this kind of input, to have this kind of authorization for consent. In practice, my suggestion would be that this is not something that is going to be unreasonably withheld by the district attorney's office.

. . . .

Mr. PICCOLA. . . . .

. . . As Mr. Masland pointed out, there is paragraph (3) in the bill, which is

existing law, which does not give [the] district attorney veto, as you characterize it. In other words, if the applicant has been crime free and out of trouble for 5 years, while the district attorney will have notice of the application and could object to the court, it will be up to the court to decide whether or not the application is to be granted.

The only time that the district attorney has, which as you characterize, a veto power is where the individual is 18 years of age or older and the 5 years has not elapsed. In that case, if he or she wishes to have his records expunged earlier than that 5–year period, he must get the district attorney's consent before he can even get before the court. So the court probably will not even take the matter up until the district attorney has consented.

. . . .

I might point out to the gentleman, as Mr. Masland indicated, we held a public hearing on this bill, and the Juvenile Court Judges Commission, as well as Judge Baer in Allegheny County, testified in favor of this, had no objections to this, and felt that it was entirely appropriate under the circumstances.

Following this discussion, Mr. Preston's amendment was defeated and the bill was passed, ultimately, becoming the statute at issue in this case.

■ From this discussion on the eve of passage of the amended statute, the intent of the legislature is evident. Moreover, following our review, it is apparent that the juvenile court's interpretation and application of the statute was in compliance with both the language of the statute and the legislature's intent. Although the language of Juvenile Court Rule 170(E) appears to conflict with the statutory language, in actuality it does not do so. Consistent with Mr. Piccola's discus-

sion with regard to subsection (4), if the Commonwealth does not consent to the expungement petition, there may not even be a need for a hearing. However, if the Commonwealth does consent, the court must hold a hearing to consider the factors listed at section 9123(a)(4)(i) through (iv) before either granting or denying the petition. Simply stated, and despite all the arguments presented by the parties, this matter centers on the interpretation of subsection (4), which we definitively recognize allows the Commonwealth to deny consent, a determination by the Commonwealth that cannot be overridden by the juvenile court. Moreover, as we noted earlier, Appellants acknowledged at oral argument that the Commonwealth did provide reasons for denying consent, although they argue that the reasons given were not sufficiently specific. However, the juvenile court found that the Commonwealth's refusal to consent was not arbitrary or without reason, even though the judge was not in agreement with the Commonwealth's conclusions.

We also are compelled to disagree with Appellants' contention that allowing the Commonwealth to refuse consent disregards the intent of the statute. We note that the intent of CHRIA balances the help received by the juvenile and the stigma attached to an adjudication of delinquency against the protection of public safety. *See A.B. supra.* Additionally, we take into consideration that prior to the enactment of the amended statute, an appellant in the same position as the current Appellants would have had no recourse to seek expungement at all. Section 9123(a)(4), even with the requirement that the Commonwealth must give its consent does not undermine the statute's intent. Rather, it provides an additional avenue by which juveniles can seek and be granted expungement, provided they meet the stat-

ed requirements. Finally, Appellants here will have another opportunity to seek expungement of their juvenile records after five years from the date of the final discharge of their delinquency cases, so long as they maintain the same clean record they have laudably maintained to this point.

Accordingly, we are compelled to conclude that the juvenile court correctly applied the statute when it denied both Appellants' petitions for expungement due to the Commonwealth's refusal to consent as required under section 9123(a)(4).

Order affirmed.

Judge BOWES concurs in the result.