J-A11027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.J.U., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 1807 MDA 2017 |

Appeal from the Dispositional Order November 6, 2017
In the Court of Common Pleas of Schuylkill County Juvenile Division at
No(s):  CP-54-JV-0000244-2017

BEFORE:   STABILE, J., NICHOLS, J., and PLATT, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 20, 2018**

Appellant T.J.U. appeals from the dispositional order[1] entered after his adjudication of delinquency for acts constituting two counts of terroristic threats.[2]  Appellant challenges the sufficiency of the evidence of his adjudication and the increased grading of count one as a third-degree felony. We affirm.

The juvenile court summarized the facts from the adjudication hearing as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purported to appeal from the November 6, 2017 adjudication of delinquency.  An appeal properly lies from the dispositional order.  ***In re J.D.***, 798 A.2d 210, 211 n.1 (Pa. Super. 2002).  We have amended the caption accordingly.

[2] 18 Pa.C.S. §§ 2706(a)(1) and 2706(a)(3).

The testimony that this [c]ourt found credible was that the juvenile, [Appellant], was a student at Pottsville Area High School in Schuylkill County, Pennsylvania. [Appellant] was in 6th [period] history class with three other students name[d], R.J.S., Z.V.O., and R.V.D. The three students knew [Appellant] from being in history class together and they all got along but they weren't friends with [Appellant]. They were all in class together on Thursday, October 12, 2017. A pep rally was scheduled for Friday, October [13], 2017 because it was homecoming weekend and a football game was scheduled for that Friday night. [Appellant] told the three boys on Thursday after history class that they should not go to the pep rally because something big was going to happen. The boys questioned [Appellant] about what he meant and he said if it happens he wouldn't be in class on Monday. The bell rang and the boys had to go to their next class and did not discuss the statement further.

R.J.S. testified that after class [Appellant] told the other three boys that he had something big planned for tomorrow and don't go to the pep rally. R.J.S. also testified that [Appellant] told him that if it works, like whatever is going to happen Friday, he wouldn't be there Monday. R.J.S. testified that as the day went on the statement caused him concern. Later Thursday night, R.J.S. started a group chat on Snapchat[3] with Z.V.O. to discuss the statements that [Appellant] made and other students were added to the group chat. R.J.S. testified that he did not go to school Friday. He testified that he did not feel too hot but he did not see a doctor.

Z.V.O. testified that [Appellant] stated that he had a big plan for Friday at the pep rally, not to go and that, like if it went well, he wouldn't be there Monday. Z.V.O. testified that he told one friend, D.C. about the statements during the day. He went to swim practice after school and then he was involved in a Snapchat about the statements with R.J.S. Z.V.O testified that he was kind of concerned about the statements and he also did not attend school on Friday because he had a fever.

R.V.D. testified that [Appellant] said something was going to happen at the pep rally and that me, R.J.S. and Z.V.O. shouldn't

---

[3] "Snapchat is a social media platform where users share photographs and messages . . . ." **Goldman v. Breitbart News Network, LLC**, 302 F. Supp. 3d 585, 585 n.1 (S.D.N.Y. 2018).

go to the pep rally. [Appellant] also told them that he would find out on Monday. He testified that he didn't tell anyone at school because he didn't think he was going to do it. He testified that he began to worry later Thursday night when R.J.S. made the group chat and everyone was calling the principal. He testified that he went to school and the pep rally on Friday.

E.A., a senior at Pottsville Area High School heard about the statement that [Appellant] made and he called R.J.S. to discuss the statements that were made to him. E.A. testified that his sister who is a sophomore at Pottsville Area High School was having panic attacks about the situation. After E.A. spoke with R.J.S. to confirm the statements made by [Appellant], E.A. testified that he called everyone he knew and told them to be safe, even if that meant not going to school on Friday.

Mrs. Tiffany Reedy [(Principal)] testified that she is the principal of the Pottsville Area High School. She testified that she was at the soccer game in the evening on Thursday, October 12, 2017 when she first learned of the statements made by [Appellant]. She received a text from the band director who received a concerning phone call from a parent. She testified that she contacted the superintendent who was also made aware of the situation, as he was contacted by parents. [Principal] testified that she was contacted by a number of parents, students, former students as well as faculty and staff. She testified that she was inundated with phone calls and texts from parents, staff, faculty and students.

[Principal] wanted to confirm the information that she received so she spoke to two of the three boys who heard the statements made by [Appellant]. After having received confirmation of the statements made by [Appellant], [Principal] was concerned about the statements and had a meeting Thursday evening with the superintendent of the school, the dean of students, and other members of the administrative team. The school administrators also contacted the Pottsville Police and informed them of the situation and they were told by the police that several parents had already called the police. [Principal] testified that the school administrators met all of Thursday evening until 12:45 a.m. Friday morning discussing all of the options available to the school because it was an absolute panic.

The administrators discussed cancelling school, the pep rally and the football game. The administrators received word from the

- 3 -

Pottsville Police that [Appellant] was taken into custody late Thursday evening so they made the decision not to cancel school, the pep rally or the football game. [Principal] testified that although [Appellant] was in custody on Friday morning, there was still a disruption to the school's usual activities. The average attendance for each day that week was about 70 students absent each day but on that Friday there were 116 students absent from school. Friday morning [Principal] also had an emergency meeting with the faculty and administrators so that they could talk to the students and make them feel comfortable about the situation. She testified that she never had a meeting like that before and that she also had a meeting at the end of the day. She testified that from the time she heard the statements on Thursday evening, until Friday after school, she was not able to attend to her usual and customary operations due to the statements made by [Appellant].

Juvenile Ct. Op., 1/19/18, 1-4.

On October 13, 2017, a petition was filed against Appellant alleging one count of a delinquent act of terroristic threats under 18 Pa.C.S. § 2706(a)(1), graded as a third-degree felony. On October 23, 2017, the petition was amended to include a second count of terroristic threats under 18 Pa.C.S. § 2706(a)(3), graded as a first-degree misdemeanor.

A hearing was held on November 6, 2017. At the conclusion of the hearing, the court adjudicated Appellant delinquent on both acts and entered a dispositional order placing Appellant on probation. Appellant filed a timely notice of appeal on November 20, 2017. Both Appellant and the juvenile court subsequently complied with Pa.R.A.P. 1925.

Appellant raises the following questions for our review:

1. Whether the evidence introduced at the juvenile hearing was insufficient to sustain [Appellant]'s adjudication of two (2) counts of terroristic threats?

   2. Whether the evidence introduced at the juvenile hearing was insufficient for the grading of the offense under 18 Pa.C.S.A. Section 2706(a)(1) as a felony under Section 2706(d)?

Appellant's Brief at 6 (full capitalization omitted).

   In support of his first issue, Appellant claims there was insufficient evidence to establish terroristic threats because his statements did not constitute a threat and he did not demonstrate an intent to terrorize another.[4] *Id.* at 24. Appellant asserts that "[t]he statements [were] vague and inconclusive" and did not amount to a threat. *Id.* at 19. Appellant instead suggests that his statements were "merely idle juvenile chit chat, made in a spur of the moment manner after history class." *Id.*

   Appellant further notes that his own demeanor was described by the three other students as calm, even happy, when he made the statements. *Id.* at 21-23. He emphasizes the three other students initially did not take Appellant's statements seriously, one of the students laughed in response to the statements, and that same student and another student testified that they would have reported the conversation if they were concerned. *Id.* at 20-22, 23. Appellant thus concludes that the juvenile court failed to consider the totality of the circumstances and that the court's "ruling was based largely upon how people (including school officials) reacted after hearing about the statements on a second or third hand basis later that day after school." *Id.*

---

[4] Appellant does not argue that the evidence failed to establish that he recklessly caused terror or serious public inconvenience.

The Commonwealth counters that "perhaps 10, 15 or even 20 years ago [Appellant] would be correct" in his assertions that his statements did not constitute a threat conveyed with the intent to terrorize. Commonwealth's Brief at 6.

> However, we cannot analyze these statements in a detached vacuum. Saying to your classmates that 'something big' is going to happen and following that statement up with a warning 'do not go to the pep rally tomorrow' clearly contains all of the elements of a threat the [t]rial [c]ourt justifiable found the necessary intent to cause terror to others by virtue of fear.

*Id.* at 6-7.

When reviewing the sufficiency of the evidence, our standard of review is *de novo*, and our scope of review is plenary. ***See In re R.R.***, 57 A.3d 134, 139 (Pa. Super. 2012) (citation omitted). "[W]e must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." ***In re L.A.***, 853 A.2d at 388, 391 (Pa. Super. 2004). Additionally, "[t]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***In re B.R.***, 732 A.2d 633, 636 (Pa. Super. 1999).

Section 2706(a)(1) and (3) of the Crimes Code provide, in pertinent part:

A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1)    commit any crime of violence with intent to terrorize another; [or]

\*\*\*

(3)    otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706(a)(1), (3).  "The purpose of [section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience."  18 Pa.C.S. § 2706 cmt.

Under the statutory language, with respect to the communication element, a direct communication of the threat between the juvenile and the intended victim is not required.  ***In re L.A.***, 853 A.2d 388, 391 (Pa. Super. 2004).  Further, "[i]t is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." ***Commonwealth v. Martinez***, 153 A.3d 1025, 1028 (Pa. Super. 2016) (citation omitted). "Neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." ***Commonwealth v. Anneski***, 525 A.2d 373, 376 (Pa. Super. 1987).

"A person acts intentionally with respect to a material element of an offense when . . . if the element involves the nature of his conduct or a result

thereof, it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005) (*en banc*) (citations omitted). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." ***Id.*** Thus, "even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce." ***In re B.R.***, 732 A.2d 633, 636 (Pa. Super. 1999) (citation omitted).

In the case of ***In re B.R.***, a teacher overheard a juvenile and two other students talking about disabling campus security cameras, destroying school property, and bringing a gun to class. ***Id.*** at 635. As a result of his comments, the juvenile was adjudicated delinquent for terroristic threats. ***Id.*** On appeal, the juvenile challenged the sufficiency of the evidence, arguing his comments amounted to "idle juvenile chit chat." ***Id.***

In affirming the juvenile's adjudication, this Court held:

> These types of statement are not as Appellant characterizes mere "idle juvenile chit chat." They are words with powerful and disturbing ramifications. As [the trial court] noted: "Other children of like age had made similar threats recently and had carried them out with tragic consequences for both the juveniles and their victims."

\*\*\*

> Our state's Supreme Court has recently reemphasized, reflecting the strong public interest in reducing the level of violence within our schools and in the community in general, that it is of paramount importance that our schools must be kept as centers of learning free of fear for personal safety. This concept of safety encompasses the notion of teachers and students being secure and free from the fear of becoming victims of senseless violence. However, freedom from this type of grim fear is destroyed by statements such as [the juvenile's].

*Id.* at 638-39 (footnote and citation omitted).

Instantly, Appellant referenced a particular time and place (the school pep rally on Friday), and told the three other students not to attend because "something big" was going to happen. Appellant's statements involved a specific school-sanctioned event at which there would be numerous attendees. Appellant told the other students that he would not be at school the following Monday. Although Appellant did not articulate a specific crime of violence, it was reasonable to infer that Appellant conveyed a threat of violence. *See Martinez*, 153 A.3d 1028; *In re B.R.*, 732 A.2d at 638. When he made the statements, Appellant was calm and soft spoken, N.T., 11/6/17, at 32, 61, and the record does not establish circumstances evidencing the statement was made "spur of the moment" out of transitory anger or "idle chit-chat." *See Walls*, 144 A.3d at 937; *In re B.R.*, 732 A.2d at 638. Appellant's argument that his audience initially believed Appellant would not carry the threat out is simply not an element of the offense. *See Martinez*, 153 A.3d at 1028. In sum, when viewed under the totality of the circumstances, and drawing all reasonable inference in favor of the Commonwealth, Appellant's statements

could be reasonably construed as a threat made with the intent to terrorize. *See In re R.R.*, 57 A.3d at 139.

In his second issue, Appellant challenges the sufficiency of the evidence for grading the subsection (a)(1) offense as a third-degree felony. Appellant's Brief at 25. Appellant argues that the occupants of the school were not diverted from their normal or customary operations as a result of his comments. *Id.* at 26. He asserts that "[a]lthough school officials had additional work dealing with the developing situation and had to work late Thursday night, all school activities and functions continued as planned." *Id.* Appellant also references the principal's testimony, stating that "although there were increased absences in school on Friday, she could not establish that the increased absences were due to what Appellant had said the prior day in class." *Id.* at 26.

Terroristic threats is generally graded as a misdemeanor of the first degree. *See* 18 Pa.C.S. § 2706(d). However, the conduct constitutes a felony of the third degree if "the threat causes the occupants of the building, place of assembly or facility of public transportation to be diverted from their normal or customary operations." *Id.*

> The juvenile court addressed Appellant's claim as follows:
>
> The juvenile argues that the school, pep rally, or football game was not cancelled and therefore the threat did not divert the occupants of the school from [their] normal customary operations. However, it was due to the good work of the school administration and the Pottsville Area School District that the juvenile was taken into custody and school, the pep rally and football game did not have to be cancelled. The school administrators had to spend all

- 10 -

of Thursday evening addressing the statements that were made by [Appellant] and how to handle those statements the following day if there was school.

This [c]ourt found that there was ample evidence that the threat caused the occupants of the Pottsville Area High School to be diverted from their normal and customary operations. [Principal] testified that there were normally approximately 70 students absent from school each day and there were 116 students absent on Friday morning. [Principal] testified that she spent her entire day on Friday dealing with the issues caused by [Appellant's] statements. Also, [Principal] and the superintendent had to have a meeting with all faculty and staff on Friday morning to address the situation and go over with the faculty and staff how they should address the students in the morning so the students felt comfortable.

The students at the Pottsville Area High School clearly would also have been impacted by the statements. Instead of going to school and learning the students had to learn about a situation where a threat was made to the safety of the school. The students had to deal with the anxiety of that situation as they went through their school day. It was clear from the evidence that [Appellant]'s statements caused a substantial disruption for all faculty and staff, in addition to the students, from their normal operations on Friday, October 13, 2017.

Juvenile Ct. Op., 1/19/18, at 9-10.

We agree with the juvenile court's conclusions. Although the school did not cancel the events scheduled for Friday, October 13th, Appellant's conduct caused the administrators, staff, and students of Pottsville High School to be diverted from their normal operations on both Thursday and Friday.[5] Accordingly, we affirm.

---

[5] In his brief, Appellant asserts that the juvenile court illegally increased the grading of both charges to a felony and "penalized [Appellant] for filing a Notice of Appeal." Appellant's Brief at 25. However, we note that although

- 11 -

Dispositional order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/20/2018

---

the juvenile court stated in its 1925(a) opinion that the evidence was sufficient to support a felony grading on either charge, the opinion itself did not have the effect of altering Appellant's adjudication for the 2706(a)(3) offense, which was graded as a first-degree misdemeanor.