**In the Interest of B.R., a Minor.**

**Appeal of B.R., a Minor.**

Superior Court of Pennsylvania.

Submitted Feb. 1, 1999.

Filed May 25, 1999.

---

Frank B. McWilson, Public Defender, Pittsburgh, for appellant.

Michael Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

Before EAKIN, J., ORIE MELVIN, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 This is an appeal by B.R.,[1] a minor, of his adjudication of delinquency for the commission of the offense of Terroristic Threats.[2] We affirm.

¶ 2 The Honorable Robert E. Colville of the Court of Common Pleas of Allegheny County has aptly summarized the events which gave rise to this proceeding as follows:

> The evidence [,adduced at the delinquency hearing held June 2, 1998,] showed that [on April 27, 1998] the [Appellant], [B.R.], made threatening statements in the presence of and directed to Mr. Hudak, a teacher assigned to monitor the three boys in the school hallway for a short period as they awaited a meeting with the Principal. [N.T. Delinquency Hearing, 6/2/98, at 8–9.] Mr. Hudak testified that the boys were talking among themselves. After a time, [B.R.] looked up and stated that he would "bring a can of black spray at the end of the school year and spray the camera and then go into Mr. Wilson's office and destroy the main communications." [Id. at 9.] [B.R.] then talked about bringing a gun to school.[3] [Id. at 10] Mr. Hudak asked the boys to please not "go that route" and to stop discussing such a subject. A few minutes later, [S.S.], one of the other boys, said "yeah, I'm going to bring a gun to school; I'm going to shoot Mr. Wilson and line up all the other teachers and shoot them." [Id. at 11.] ... Mr. Hudak further testified that as one of the teachers in the school and in light of his physical presence with the boys when these statements were made, that the threatening statements appeared to be directed to him. [Id. at 25–26.] He testified that he was concerned by the statements.... [Id. at 10–12, 17, 19]

Trial Court Opinion, dated 7/22/98, at 1–2.

¶ 3 Mr. Hudak subsequently informed school officials, who contacted the local police department. After investigation the Appellant was arrested on April 29, 1998 and committed to Shuman Detention Center. He was afterward released to home detention on May 1, 1998.

¶ 4 B.R. was formally charged by Juvenile Petition filed 5/5/98 with the aforementioned offense of Terroristic Threats and an additional charge of Conspiracy.[4] After the hearing held before Judge Colville, B.R. was adjudicated delinquent of the offense of Terroristic Threats. The conspiracy charge was dismissed. As a result of the adjudication, B.R. was put on informal school probation and ordered to continue ongoing counseling. This timely appeal followed.

¶ 5 On appeal to our Court Appellant raises one issue for our consideration:

---

1. The caption has been amended to protect the identity of the minor child.

2. 18 Pa.C.S.A. § 2706.

3. Specifically B.R. said that he would bring a gun to school the last day of school which was June 11 th. Id. at 10, 16.

4. 18 Pa.C.S.A. § 903.

I. Does the terroristic threats statute criminalize statements made by students who were "chit-chatting amongst themselves ... laughing, joking and carrying on" and who had absolutely no intent to terrorize or to carry out any actions?

Appellant's Brief at 3. Appellant's issue is essentially a question of whether the evidence introduced at his hearing concerning the statements which he had made, was sufficient to sustain his conviction for Terroristic Threats.

■■■ ¶ 6 We have said in prior cases: In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt.

*Commonwealth v. Montini*, 712 A.2d 761, 767 (Pa.Super.1998); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103, 1105 (1994), *appeal denied* 538 Pa. 669, 649 A.2d 671 (1994). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 965 (1996). It is within the province of the fact finder to determine the weight to be accorded each witness's testimony and to believe all, part, or none of the evidence introduced at trial. *Commonwealth v. Molinaro*, 429 Pa.Super. 29, 631 A.2d 1040, 1042 (1993). The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Seibert*, 424 Pa.Super. 242, 622 A.2d 361, 363 (1993), *appeal denied* 537 Pa. 631, 642 A.2d 485 (1994) (citing *Commonwealth v. Sullivan*, 472 Pa. 129, 150, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A.2d 95, 97 (1943)).

■■ ¶ 7 A person is guilty of terroristic threats, a misdemeanor of the first degree, if he or she "threatens to commit any crime of violence with intent to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience." 18 Pa. C.S.A. § 2706. Accordingly, the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. *Commonwealth v. Kelley*, 444 Pa.Super. 377, 664 A.2d 123, 127–128 (1995), *appeal denied*, 544 Pa. 603, 674 A.2d 1068 (1996). Neither the ability to carry out the threat nor a belief by the persons threatened that it will be carried out is an essential element of the crime. *Commonwealth v. Hudgens*, 400 Pa.Super. 79, 582 A.2d 1352, 1358 (1990) (quoting *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373, 376 (1987), *appeal denied*, 516 Pa. 621, 532 A.2d 19 (1987)). Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. *Id.* at 1358.

¶ 8 As we have also stated in a prior case:

It has been observed that even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce. Moreover, it is unnecessary for the [speaker] to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement.

*Commonwealth v. Bailey*, 440 Pa.Super. 286, 655 A.2d 566, 568 (1995), *appeal denied* 540 Pa. 593, 655 A.2d 982, (1995) (quoting *Commonwealth v. Campbell*, 425 Pa.Super. 514, 625 A.2d 1215, 1217 (1993)) (internal quotations and citations omitted).

¶ 9 In the case at bar, Judge Colville found that the Commonwealth had proven both requisite elements as set forth in *Kelley, supra,* to sustain a conviction for Terroristic Threats. Judge Colville reasoned as follows:

The prosecution was required to prove that [B.R.] made threatening statements about committing a violent crime and made them either with the intent to cause fear in Mr. Hudak and others or at least with reckless disregard to creating such a fear in those persons. The evidence showed that [B.R.] made unequivocal statements that he would destroy the school communications and bring a gun to school, which alone constitute threats to destroy property and to commit a violent crime, although no specific victim was mentioned by [B.R.]. The fair implication to be drawn from the totality of the circumstances of [B.R.'s] statements is that the statements constituted a threat to harm school staff, a group which included Mr. Hudak.

With regard to the intent element, there can be no doubt that the statements were meant to create a fear or apprehension in Mr. Hudak, and such an intent or the reckless regard thereof can be fairly concluded from the statements themselves. *See Commonwealth v. Kelley*, 444 Pa.Super. 377, 664 A.2d 123[, 128] (1995).

The elements of the crime were proved by the prosecution and the evidence was sufficient to adjudge [B.R.] delinquent under the circumstances.

Trial Court Opinion at 5. After consideration of the parties' respective arguments and the relevant caselaw, we agree with Judge Colville's reasoning.

■ ¶ 10 In *Kelley* we held the nature of the threat itself, in that case a threat to kill, was evidence of the intent on the part of the speaker to terrorize the recipient. 664 A.2d at 128. In the case at bar, Mr. Hudak testified that this incident had taken place shortly after a student had shot a teacher at a dance in Edinboro Pa.[5] N.T. supra, at 10. Mr. Hudak testified that the statement B.R. made about bringing a gun to school, in light of those tragic events, caused his concern. *Id.* Specifically Mr. Hudak recounted that he had "reason to be afraid." *Id.* at 17. The trial judge also took judicial notice of a "climate of apprehension" that existed at the time as a result of recent school related shootings by students which were prominent in the news. Trial Court opinion at 4. Because of these factors, the specific nature of B.R.'s threat, to bring a gun to school, could have been reasonably inferred by any teacher in the public school system at that time as a threat to his or her personal safety. Thus, the trial court's finding that it was the intent of B.R. with his statement to attempt to terrorize Mr. Hudak by causing him fear or apprehension, or that B.R. acted with reckless disregard of causing fear or apprehension was warranted.

¶ 11 The cases of *Commonwealth v. Sullivan*, 269 Pa.Super. 279, 409 A.2d 888 (1979) and *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373 (1987), *appeal denied*, 516 Pa. 621, 532 A.2d 19 (1987) which Appellant cites and discusses in his brief (See Appellant's Brief at 11–12) do not compel a different result.

¶ 12 In *Sullivan* the appellant telephoned the State Police Barracks and requested that a trooper be dispatched to his home to investigate his claim that the Sheriff of the County had allegedly assaulted the appellant's father. Frustrated at the delay in the response of the trooper sent to investigate, the appellant telephoned the barracks again and said "If you don't want to send anybody down here, I

5. The Edinboro shooting occurred on April 25, 1998.

have a .30–30 rifle and I'll come up there and blow that son of a bitch's head off." 409 A.2d at 888. The appellant encountered the Sheriff on the street the next morning by accident and a rather loud verbal confrontation ensued. Appellant used this "discussion" to avail himself of the opportunity to convey personally to the Sheriff his desire to kill him. *Id.* at 889. Appellant was convicted of two counts of terroristic threats.

¶ 13 We reversed appellant's conviction because we held that the appellant did not possess the requisite intent to terrorize the sheriff. We noted the Official Comment to 18 Pa.C.S.A. § 2706 section authored by the Pennsylvania Joint State Government Commission provides:

> The purpose of this section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended to penalize mere spur of the moment threats **which result from anger.**

*Id.* at 889 (emphasis supplied). Consequently, we held that because appellant's statements were the product of his angry and agitated emotional state of mind, the appellant did not possess the requisite intent for conviction under Section 2706. *Id.*

¶ 14 In *Anneski* the appellant told her neighbor during a confrontation that if the neighbor " 'tried to run over her kids anymore at the bus stop', . . . Anneski would bring a gun and use it." 525 A.2d at 374. We also reversed Anneski's conviction as being against the weight of the evidence since we held that her statement was a "spur-of the moment threat resulting from transitory anger prompted by [the neighbor's] threat to hit [her] children if they obstructed her vehicle's passage." *Id.* at 376.

 ¶ 15 These cases can therefore be read for the proposition that statements

which are "spur-of the moment," that is the product of a heated exchange between parties made out of hysteria or anger that do not trigger foreseeable immediate or future danger, are not to be criminalized by 18 Pa.C.S.A. § 2706. However, in the case at bar, B.R.'s statements were not the product of any heated verbal exchange or confrontation with his teacher Mr. Hudak. There was no conversation at all between Mr. Hudak and B.R. prior to B.R.'s unprovoked statements. To the contrary, these statements were delivered by B.R. in a deliberate, matter of fact manner only after the boys had talked among them-selves. See Trial Court Opinion at 4. Thus B.R.'s statements can not be characterized as a random "spur of the moment" emotional outburst resulting from anger.

¶ 16 These types of statements are not as Appellant characterizes mere "idle juvenile chit chat.[6]" They are words with powerful and disturbing ramifications. As Judge Colville noted: "Other children of like age had made similar threats recently and had carried them out with tragic consequences for both the juveniles and their victims." Trial Court Opinion at 4.

¶ 17 It is an unfortunate and distressing fact that today teachers and students are many times the victims of violence perpetrated by students. It has been estimated that every day in the United States 6,250 teachers are threatened with violence and 260 teachers are physically assaulted. *See* 86 Journal of Criminal Law and Criminology 1493. Moreover, it has also been estimated that on average four percent of American high school students carry a gun to school at least occasionally. Centers for Disease Control Leads from the Morbidity and Mortality Weekly Report, 266 JAMA 2342 (1991). The Justice Department has noted that about three million thefts and violent crimes happen on or near school campuses each year, an average of one incident every six seconds. The number of

---

**6.** Indeed Mr. Hudak twice rejected the assertion by counsel for S.S. that the nature of the youths' conversation was joking when they

made these statements. *See* N.T. *supra,* at 21, 27.

juveniles murdered increased by 82% from 1984 to 1994. Each school day about 150,000 students stay home because they fear being shot, stabbed, or beaten, and about 3700 students are in fact the victims of assault daily. Significant numbers of elementary school children also worry about becoming victims of violence. *See*, United States Department of Justice. Juvenile Offenders and Victims: 1996 Update on Violence. Office of Juvenile Justice and Delinquency Prevention, Office of Justice Programs (OJP). Washington, DC., February 1996.

¶ 18 We are also painfully aware that far too many times within the last two years our nation has mourned as a result of horrific carnage wrought by gun wielding school students. On December 1, 1997 a 14–year old brought a gun to a school prayer group meeting in West Paducah, Kentucky, opened fire and killed three students while wounding five others. On March 24, 1998 in Jonesboro Arkansas, an 11 year old and a thirteen year old ambushed classmates and teachers assembling outside of the school after a false fire alarm. One teacher and four students were killed while nine students and another teacher were wounded. On April 25, 1998 in Edinboro, Pa., a fourteen year old middle school student shot and killed a teacher and wounded two other students at a school-sponsored dance. On May 21, 1998 a 15 year old student brought a gun to school in Springfield Oregon and killed two students and wounded twenty two others. Most recently, on April 20, 1999 at Columbine High School in Colorado, fifteen people perished when two students went on a killing rampage.

¶ 19 In light of this tragic and stark reality of the potential danger of gun related violence within our schools, a statement by a student in the presence of a teacher that he **would** bring a gun to school must be regarded seriously as an attempt to create fear and apprehension of a future violent act or, at the very least, a reckless disregard of the potential to create such fear and apprehension. As the above referenced sorrowful events demonstrate, a threat by a student to bring a gun to school can in no way be treated as joking statement which can be casually disregarded. Our state's Supreme Court has recently reemphasized, reflecting the strong public interest in reducing the level of violence within our schools and in the community in general, that it is of paramount importance that our schools must be kept as centers of learning free of fear for personal safety. *See In Re: F.B*, 555 Pa. 661, 726 A.2d 361, 367 (1999). This concept of safety encompasses the notion of teachers and students being secure and free from the fear of becoming victims of senseless violence. However, freedom from this type of grim fear is destroyed by statements such as Appellant's. Because this is precisely the type of impairment to personal security that the Terroristic Threats statute was enacted to avoid, we find Appellant's adjudication of delinquency proper.[7]

¶ 20 Order affirmed.

---

7. We look forward to the day when the knowledge and experience of parents, teachers, psychiatrists and law enforcement officials can, through a comprehensive effort, render violence in schools or threats of violence such as Appellant's nonexistent.