**In the Interest of J.H., a minor.**

**Appeal of J.H., a minor, Appellant.**

Superior Court of Pennsylvania.

Argued January 15, 2002.
Filed: April 15, 2002.

---

**17.** Counsel sought to raise several issues for review on direct appeal, however, because of the fugitive status of Appellant, we declined to address these claims. *Judge,* 609 A.2d at 786.

**18.** Appellant also argues that because this is a capital case, he should be given the benefit of the relaxed waiver rule. As noted in *Kindler II*, relaxed waiver does not apply to Appellant's situation. 722 A.2d at 148 n. 13. In addition, Appellant claims that a failure by

this Court to review his PCRA Petition will constitute a miscarriage of justice, which this Court has the power to remedy. There is no injustice in refusing to allow Appellant to revive on collateral review claims that he waived during his direct appeal.

**19.** The Prothonotary of the Supreme Court is directed to transmit the record to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Lawrence J. Rosen, Harrisburg, for appellant.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Commonwealth, appellee.

Before STEVENS, TODD, and CAVANAUGH, JJ.

TODD, J.

¶ 1 J.H. appeals the order of the Dauphin County Court of Common Pleas adjudicating him delinquent and placing him on formal probation for an eight-week pro-

gram at Tressler Weekend Program[1] for making terroristic threats[2] against his drama teacher. We affirm.

¶ 2 The facts of this case may be summarized as follows: During his drama class at Susquehanna High School, J.H. volunteered to read a part in a play script. While reading his part, J.H. began using the word "fuck," even though the word did not appear in the script. J.H.'s drama teacher reprimanded him three to five times for using the word. Despite the reprimands, J.H. continued to "ad lib" in the same manner, at which time the teacher threatened to send J.H. to the principal's office if he used the word one more time. J.H. apologized and agreed to stop using the word. However, J.H. did use the word again and the teacher advised J.H., who was on informal probation with the Dauphin County Juvenile Probation Office, that she was going to address his behavior with Chris Hakel, J.H.'s probation officer. J.H. became angry, and told the teacher that if she spoke with his probation officer, "it would be that last thing [she] ever did." (N.T. Hearing, 11/21/00, at 10.) When the teacher asked J.H. if he was aware that he was threatening her, he responded that he was "promising [her]." (*Id.*) As a result of the incident, J.H. was charged with making terroristic threats. After a hearing on November 21, 2000, J.H. was adjudicated delinquent.

¶ 3 This Court previously has explained: In reviewing the sufficiency of the evidence to support the adjudication below, we recognize that the Due Process Clause of the United States Constitution requires proof "beyond a reasonable

---

1. In addition, J.H. was ordered to participate in the Abraxas Leadership Development Program, to perform community service, continue counseling, and to maintain employment and a C average in school.

2. 18 Pa.C.S.A. § 2706.

doubt" at the adjudication stage when a juvenile is charged with an act which would constitute a crime if committed by an adult. Additionally, we recognize that in reviewing the sufficiency of the evidence to support the adjudication of delinquency, just as in reviewing the sufficiency of the evidence to sustain a conviction, though we review the entire record, we must view the evidence in the light most favorable to the Commonwealth.

*In re A.D.*, 771 A.2d 45, 48 (Pa.Super.2001) (*en banc*) (citations omitted).

■ ¶ 4 Under Section 2706 of the Crimes Code

A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S.A. § 2706. Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. *Commonwealth v. Fenton*, 750 A.2d 863 (Pa.Super.2000).

■ ¶ 5 On appeal, J.H. concedes that he threatened to commit a crime of violence against his teacher. However, he argues that his statement was not made with the requisite intent to terrorize because it was spontaneous, made in anger, and was the result of several psycho-social stressors he was experiencing at the time. J.H. correctly notes that Section 2706 "is not meant to penalize 'mere spur-of-the-moment threats which result from anger.'" *Id.* at 865 (citations omitted). However, based on our thorough review of the record in the instant case and the relevant case law, we cannot agree that the threat made by J.H. was a spur-of-the moment threat which resulted from anger, such that it does not fall within the parameters of Section 2706.

¶ 6 As support for his argument that the statement he made to his teacher was not made with an intent to terrorize, J.H. cites the case of *Commonwealth v. Kidd*, 296 Pa.Super. 393, 442 A.2d 826 (1982), in which the appellant was arrested for public drunkenness and during the process threatened to kill the arresting officers. On appeal, this Court concluded that, in view of the appellant's obvious state of inebriation and agitation, there was insufficient evidence to establish that the appellant intended to place the officers in a state of fear. *Id.* at 397, 442 A.2d at 827.

¶ 7 Similarly, in *Commonwealth v. Anneski*, 362 Pa.Super. 580, 525 A.2d 373 (1987), this Court concluded that the jury's finding that the appellant was guilty of making terroristic threats was contrary to the weight of the evidence. In *Anneski*, there was an ongoing dispute between the appellant and her neighbor regarding the rural roadway the appellant's children were required to use to walk to school. The neighbor had complained that the children impeded her progress when she was driving. Believing that the neighbor's car actually struck a school bag being carried by one of her children one morning, the appellant confronted her neighbor and an argument ensued. The neighbor told the appellant that if the children did not get out of her way, she would run into them again. The appellant replied that if the neighbor ran into her children again, she would get a gun and use it. This Court concluded that while the evidence estab-

lished an exchange of threats made during a heated argument between neighbors, the circumstances of the exchange suggested that the appellant lacked a settled purpose to terrorize her neighbor. *Id.* at 586, 525 A.2d at 376.

■ ¶ 8 In the instant case, we recognize, as did the trial court, that J.H. was angry when he threatened his teacher. However, "[b]eing angry does not render a person incapable of forming the intent to terrorize." *Fenton,* 750 A.2d at 865. Rather, as illustrated by the cases discussed above, this Court must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation. For example, in the case of *In re B.R.,* 732 A.2d 633 (Pa.Super.1999), this Court affirmed the adjudication of delinquency of a student who told a teacher that he would spray a surveillance camera with black paint, destroy the school's main communication system, and then bring a gun to school. The teacher to whom B.R. made these statements had been assigned to monitor B.R. and two other boys in the school hallway while they were waiting to meet with the school principal. In holding that B.R.'s statement could not be construed as a random, spur-of-the-moment, emotional outburst resulting from anger, we noted:

> B.R.'s statements were not the product of any heated verbal exchange or confrontation with his teacher Mr. Hudak. There was no conversation at all between Mr. Hudak and B.R. prior to B.R.'s unprovoked statements. To the contrary, these statements were delivered by B.R. in a deliberate, matter of fact manner only after [he and two other boys] had talked among **themselves.**

*Id.* at 638 (emphasis original).

■ ¶ 9 In the instant case, the evidence of record does not support a finding that J.H.'s threat was made in the context of a heated verbal exchange or a heated confrontation. J.H.'s drama teacher testified at his delinquency hearing that at the beginning of class on the day of the incident, J.H. was calm. (N.T. Hearing, 11/21/00, at 6.) Indeed, after being reprimanded several times by his teacher for using profanity, J.H. apologized and promised to stop using profanity. When J.H. continued to use offensive language, his teacher advised him that she would discuss the situation with his probation officer. It was at this point that J.H. told his drama teacher that if she spoke with his probation officer, it would be the last thing she ever did. When his teacher asked J.H. if he was aware that he was threatening her, he replied that he was "promising" her. Prior to the time J.H. threatened his teacher, there was no heated verbal exchange or confrontation between J.H. and his teacher. J.H.'s teacher simply was advising him of the consequences if he continued to use profanity in the classroom.

¶ 10 Finally, as a result of the numerous incidents of violence which have occurred in the school setting over the past several years, this Court recognizes the seriousness of any threat made by a student against a teacher or another student. Indeed, we have acknowledged that in order to facilitate the:

> strong public interest in reducing the level of violence within our schools and in the community in general, that it is of paramount importance that our schools must be kept as centers of learning free of fear for personal safety. This concept of safety encompasses the notion of teachers and students being secure and free from the fear of becoming victims of senseless violence.

*In re B.R.,* 732 A.2d at 639. Accordingly, for all of the reasons set forth above, we

affirm the November 21, 2000 order of the trial court.

¶ 11 Order affirmed.

