J. S12035/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.L., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.L., | : | |
| | : | |
| Appellant | : | No. 1500 EDA 2014 |

Appeal from the Dispositional Order March 5, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division No(s).: CP-51-JV-1000175-2013

BEFORE: BOWES, SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 02, 2015**

Appellant, K.L., appeals from the dispositional order entered in the

Philadelphia County Court of Common Pleas following his adjudication of

delinquency for terroristic threats.[1]  He challenges the sufficiency of the

evidence.  We affirm.

Appellant, a sixteen-year-old high school student at the time of the

underlying incident, lived in a group home in Montgomery County.

Appellant's parents lived in Philadelphia County.  His father explained he and

Appellant's mother placed him in the group home because they "thought it

would be better for him to be off the street [and] put him in there for his

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

own sake because of where [they] live . . . ." N.T. Adjudication, 5/29/13, at 75-76.

At the May 29, 2013 adjudication hearing held by the Montgomery County Court of Common Pleas, Appellant's teacher testified to the following. "[A] few weeks prior" to the underlying incident, Appellant made a gesture of a gun with his hand. *Id.* at 7. Appellant did not say anything and made the gesture towards a wall, not at his teacher or another student. *Id.* at 13. He was unaware his teacher saw him. *Id.* She told him, "I saw what you did . . . . [T]his will never happen in this classroom or in this school again . . . . [T]his is not appropriate for school." *Id.* at 7-8. Appellant looked at the teacher and "was kind of shocked," but answered, "[T]his will never happen again." *Id.* at 7, 9. While the teacher did not know why Appellant pretended to shoot a wall, she testified, "[Y]ou can't make that gesture in school." *Id.* at 13.

His teacher further testified to the following. On October 25, 2012 at approximately 12:45 p.m., Appellant was in her history class. *Id.* at 3. Students were working quietly at their desks when Appellant "kept stretching his arms out, and it was disrupting the two students who were sitting . . . behind him, in the row next to him." *Id.* at 4. His teacher asked Appellant to stop and to sit up. *Id.* at 4, 12. Appellant said, "I'm not doing anything." *Id.* at 12. The teacher told Appellant she found his behavior disruptive, both to the other students and to her teaching, and again asked,

"Can you please stop?" *Id.* at 4. Appellant "raised his hand and made the shape of a gun," pointed his index finger directly at the teacher, and pretended to shoot twice. *Id.* at 4, 12. When asked about Appellant's demeanor when he made the gesture, the teacher testified he "seemed angry and upset that [she] asked him to stop disrupting the students behind him." *Id.* at 5. When asked to rate his anger on a scale of one to ten, she testified it was "probably about a six or a seven." *Id.* After Appellant made the gun gesture, the teacher told him to go to the principal's office. *Id.* at 9.

Appellant replied, "I didn't do anything. I'm not leaving this classroom," and became "more angry." *Id.* His teacher called the principal. *Id.* at 48. The principal and two other school officials came to the classroom and asked Appellant to leave. *Id.* at 48-49. Appellant again refused to leave. *Id.* at 49. The principal and officials told Appellant to "make a good choice and leave," after which they escorted Appellant out of the classroom. *Id.*

At the adjudication hearing, Appellant testified to the following. He did not recall making a gun gesture at a wall or receiving a warning from his teacher prior to the underlying incident. *Id.* at 43-44. He denied making a gun gesture on the day of the underlying incident. *Id.* at 40. He remembered talking with his classmate and fellow group-home resident, T.B., during class that day. *Id.* at 39. His teacher told him to stop disrupting other students. *Id.* After her warning, he turned around and

- 3 -

continued to talk with T.B. *Id.* His teacher asked him to "go to the office." *Id.* He "turned to [T.B.] and [made] a gesture with [his] finger," and said, "She always do that [sic]." *Id.* at 39. He pointed toward the front of the class with his right index finger, but did not point directly at his teacher. *Id.* at 40. When asked why he made the gesture, Appellant testified, "Because I always speak with my hands." *Id.* He testified he did not intend to "make a gun sign," threaten, or terrorize his teacher. *Id.* at 40-41. He further testified, "I didn't mean nothing by it. I didn't mean no harm with [my teacher]." *Id.* at 41. Appellant also denied he was angry during this encounter. *Id.* at 45.

Appellant called T.B. to testify at the adjudication hearing. T.B. testified to the following. Appellant was leaning back to speak with T.B. when the teacher asked Appellant to be quiet. *Id.* at 24. Appellant then told T.B., "She always does this," and "point[ed] toward the front of the classroom, or . . . the smart board." *Id.* at 25. Appellant wagged his pointed finger and shook his head, smiling. *Id.* at 26. Appellant did not make a gun gesture and did not point at the teacher. *Id.* at 26, 31-32. T.B. further testified the teacher was "sensitive and emotional." *Id.* at 27.

A delinquency petition was filed, charging Appellant with terroristic threats, harassment, and disorderly conduct. *Id.* at 2. The Montgomery County Court of Common Pleas found Appellant committed terroristic threats but dismissed all other charges. Order, 5/29/13. A representative of

Appellant's group home advised the court Appellant would be discharged from the home if he were adjudicated delinquent. N.T. at 64. A representative of the alternative school Appellant attended during his suspension testified, "He's done well" in that program. *Id.* at 65. Based on these statements, the court withheld adjudication to allow Appellant to finish summer school and transferred disposition of the case to the Philadelphia County Court of Common Pleas. *Id.* at 74. By August 2013, when the Court of Common Pleas in Philadelphia accepted Appellant's case, he had returned to his parents' home in Philadelphia. *Id.*

On March 5, 2014, the Philadelphia County Court of Common Pleas adjudicated Appellant delinquent and entered the underlying disposition placing him in a residential juvenile facility. Appellant filed a timely notice of appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of, as well as a later supplemental statement of errors.[2]

On appeal, Appellant presents one issue for review: the sufficiency of evidence for terroristic threats. Despite his testimony during his first adjudication hearing, Appellant now concedes he "pantomime[d] a gun" and acted inappropriately. Appellant's Brief at 8. However, he contends that his

---

[2] Appellant's Pa.R.A.P. 1925(b) statement also raised a challenge to improper admission of prior bad acts evidence, which he does not pursue in this appeal.

gesture, taken in context, did not communicate a threat to commit a violent act. *Id.* According to Appellant, his pantomime of a gun was merely a juvenile, angry response to his teacher's discipline, meant to communicate insubordination and disrespect. *Id.* at 8, 13. He concedes the gesture could communicate a threat if it were, for example, "[c]ombined with a verbal threat, a threatening demeanor or a history of violence," but maintains, "none of these facts were present in [his] case." *Id.* at 17. Appellant further argues he lacked intent to terrorize another. *Id.* at 21. Instead, he avers, he only intended to display disrespect and acted impulsively out of transitory anger, displaying his immaturity as a juvenile. *Id.* at 22-23. Appellant likens this case to those in which this Court has held that threats made during bouts of transitory anger or heated disputes were insufficient evidence of intent to terrorize another. *Id.* (citing ***Commonwealth v. Kidd***, 442 A.2d 826, 827 (Pa. Super. 1982); ***Commonwealth v. Sullivan***, 409 A.2d 888, 889 (Pa. Super. 1979)). He distinguishes his case from those where defendants planned violent attacks, verbalized explicit threats, or testified to requisite intent. *Id.* at 19-20 (citing ***In re L.A.***, 853 A.2d 388 (Pa. Super. 2004); ***In re J.H.***, 797 A.2d 260 (Pa. Super. 2002); ***Commonwealth v. Campbell***, 625 A.2d 1215 (Pa. Super. 1993)). We find no relief is due.

When reviewing sufficiency of the evidence from a juvenile adjudication hearing, "we must determine whether the evidence, and all reasonable

inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *In re L.A.*, 853 A.2d at 391. "In a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder." *Id.*

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*In re B.R.*, 732 A.2d 633, 636 (Pa. Super. 1999).

To satisfy the elements of terroristic threats under 18 Pa.C.S. § 2706(a)(1), the Commonwealth must establish a person "communicate[d], either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S. § 2706(a)(1). To satisfy these elements, "it is unnecessary for an individual to specifically articulate the crime of violence which he or she intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement." *Commonwealth v. Hudgens*, 582 A.2d 1352, 1358 (Pa. Super. 1990). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, 797 A.2d at 262. "Rather, the harm sought to be

prevented . . . is the psychological distress that follows from an invasion of another's sense of personal security." *In re B.R.*, 732 A.2d at 636.

"[A]s a result of the numerous incidents of violence which have occurred in the school setting over the past several years, this Court recognizes the seriousness of any threat made by a student against a teacher or another student." *In re J.H.*, 797 A.2d at 263. We have stated, "[I]t is of paramount importance that our schools must be kept as centers of learning free of fear for personal safety." *In re B.R.*, 732 A.2d at 639.

For example, in *In re B.R.*, three students, awaiting a meeting with their principal, talked about destroying school "communications" and bringing guns to school. *Id.* at 635. B.R. said he would bring a gun on the last day of school, and one of the other students said he would "line up all the . . . teachers and shoot them." *Id.* Although the students were talking to each other, a teacher assigned to monitoring them testified "the threatening statements appeared to be directed to him" and that he was concerned because of a recent incident in Pennsylvania in which a student shot a teacher at a dance. *Id.* at 637.

"Intent . . . is a subjective element . . . . Generally speaking, one is presumed to intend the normal consequences of one's actions." *Commonwealth v. Robinson*, 817 A.2d 1153, 1159 (Pa. Super. 2003).

Recognizing the legislature's intent in enacting 18 Pa.C.S. § 2706,[3] this Court has not found the requisite intent to satisfy Section 2706 where threatening words were merely the result of a heated conflict or an outburst of rage. *See, e.g.*, *Kidd*, 442 A.2d at 827 (finding no intent to establish terroristic threats where defendant, who was under police custody at hospital, "was obviously inebriated and in an agitated and angry state of mind" and whose "conduct expressed transitory anger rather than a settled purpose to carry out the threat" to shoot or kill police officers); *Sullivan*, 409 A.2d at 889 (finding, *inter alia*, "no evidence that [defendant], by his acts, intended to put the [victim] Sheriff into a state of 'extreme fear or fear that agitates body and mind'" and instead threat to sheriff was "emotional product of a chance meeting . . ." which led to "loud shouting match").[4]

Nevertheless, "being angry does not render a person incapable of forming the intent to terrorize." *In re J.H.*, 797 A.2d at 263. In *In re J.H.*, a high school drama teacher reprimanded her student several times for using profanity. *Id.* The student "apologized and promised to stop." *Id.*

---

[3] The Pennsylvania Joint State Government Commission's Comment on 18 Pa.C.S. § 2706 states this section "is not intended . . . to penalize mere spur-of-the-moment threats which result from anger."

[4] *Sullivan* and *Kidd* were decided under the former version of the terroristic threats statute, which did not include, as the current version does, the element of a direct or indirect communication of a threat. Nevertheless, those cases discussed the element of intent, which has remained unchanged.

> [He] continued to use offensive language, [and] his teacher advised him that she would discuss the situation with his probation officer. It was at this point that J.H. told his drama teacher that if she spoke with his probation officer, it would be the last thing she ever did. When his teacher asked J.H. if he was aware that he was threatening her, he replied that he was 'promising' her.

*Id.*

On appeal, this Court stated that we "must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Id.* We noted that prior to the threat, "there was no heated verbal exchange or confrontation . . . . [The] teacher simply was advising [J.H.] of the consequences if he continued to use profanity in the classroom." Nevertheless, this Court "recognize[d], as did the trial court, that [the student] was angry when he threatened his teacher." *Id.* We rejected the student's claim that he lacked the intent to terrorize, and we affirmed his adjudication for terroristic threats. *Id.* at 261, 263.

As stated above, Appellant now concedes he made a gun gesture at his teacher. Appellant's Brief at 8, 13. He also concedes he made the same gesture a few weeks earlier and his teacher had warned him not to make the gesture again. *Id.* at 13. Appellant avers the gun "gesture has multiple meanings depending on the context." *Id.* at 16. We agree to the extent that we consider the totality of the circumstances. *See In re J.H.*, 797 A.2d at 263. In this case, we emphasize the previous warning by Appellant's

teacher when Appellant made a similar gun gesture. Appellant's Brief at 13; N.T. at 7-8. The juvenile court considered the testimony of Appellant, the teacher, and Appellant's witness in weighing these circumstances, and concluded, "You could only interpret the motion that was described to this Court as a terroristic threat . . . . The motion is I'm going to shoot you, without a gun." N.T. at 61.

After careful review of the record, this Court agrees with the juvenile court there was sufficient evidence to determine Appellant committed terroristic threats. We therefore affirm the decision of the juvenile court.

Dispositional order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015