J-S15034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASIM MUHAMMAD | : | No. 494 EDA 2021 |

Appeal from the Order Entered February 11, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000538-2020

BEFORE:  NICHOLS, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:            **FILED SEPTEMBER 22, 2022**

The Commonwealth of Pennsylvania appeals from the order denying its motion to refile and regrade charges against Asim Muhammad ("Muhammad").  We reverse and remand.

The trial court summarized the evidence presented by the Commonwealth as follows:

> On September 12, 2019, [Muhammad] along with a female companion entered [Stewart Jo's (hereinafter "Mr. Jo")] place of business, a clothing store located at 5219 Market Street in Philadelphia, Pennsylvania.  At the time of the incident, Mr. Jo was approximately 79 years old and working in the store. [Muhammad] went to the back of the store, and was causing a scene, dropping merchandise on the floor, and making a mess in the store.  [Muhammad] went to leave the store [with a piece of merchandise], and Mr. Jo said to him, "you have to pay money." At that point, [Muhammad] grabbed Mr. Jo by the collar, spit in his face, punched him five or six times in the face, threw a thick bracelet from the store in his face, kicked and broke the showcase and threw all the merchandise in the store's showcase on the ground.  The cost of the repairs to the showcase were [*sic*] over $500.00.

At that point, [Muhammad] attempted to run away, and Mr. Jo grabbed him by the shirt. However, [Muhammad] proceeded to repeatedly punch and kick Mr. Jo in the face, chest, lower abdomen and foot. [Muhammad] cursed at Mr. Jo who testified he heard [Muhammad] say "fuck" and "kill" at him. Over the course of the entire incident, Mr. Jo testified he was punched 50 to 60 times in the face.

While the encounter between [Muhammad] and Mr. Jo was taking place, police arrived at the scene, took [Muhammad] off Mr. Jo and placed [Muhammad] in handcuffs. [Muhammad] was subsequently released from the handcuffs and left the store with the police.

Mr. Jo's daughter then came to the store and took her father to Urgent Care to receive medical attention for the injuries he suffered as a result of his confrontation with [Muhammad]. When he arrived at Urgent Care, Mr. Jo's face and foot had started swelling. Mr. Jo was instructed by the staff at Urgent Care to go to another hospital. He then went to Delaware County Memorial Hospital where he was admitted. Mr. Jo testified that his injuries were, "[m]y entire face was bruised and swelling, my chest felt very stuffy, I could not move my foot, and my lower abdomen was in pain." (N.T., 1/21/20, [at] 46).

Medical records from Mr. Jo's treatment were also introduced into the record and indicated Mr. Jo "was found to have a fracture of the fifth metatarsal for which he was unable to bear weight and this had to be splinted. In addition, [Mr. Jo] was noticed to have moderately radiant elevated troponins which would be consistent with a cardiac contusion." (N.T., 1/21/20, [at] 95-96).

* * * *

Mr. Jo once again testified as to . . . the fracture in his foot. "I was in a cast three or four months. I took pain medication. I received regular x-rays, and I used a walker . . .." (N.T., 2/11/21, [at] 31).

Trial Court Opinion, 9/29/21, at 2-3.

The Commonwealth charged Mohammad with aggravated assault, robbery (graded as a tier 1 felony), recklessly endangering another person ("REAP"), terroristic threats, simple assault, theft, and criminal mischief. At the conclusion of the preliminary hearing, the magisterial district judge determined that the Commonwealth had not provided evidence of serious bodily injury and on that basis dismissed the charges of aggravated assault, terroristic threats, and REAP, and downgraded the charge of robbery to a tier 2 felony.

The Commonwealth filed a motion in the Court of Common Pleas to refile the charges of aggravated assault, REAP and terroristic threats and regrade the charge of robbery as a tier 1 felony.[1] On February 11, 2021, the trial court conducted a hearing on the Commonwealth's motion to refile and regrade. At the conclusion of the hearing, the trial court denied the Commonwealth's motion, finding that the Commonwealth did not establish serious bodily injury. The Commonwealth filed a timely notice of appeal pursuant to Pa.R.A.P. 311(d),[2] and both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

---

[1] *See* 18 Pa.C.S.A. §§ 2702, 2705, 2706, 3701.

[2] Pursuant to Rule 311(d), "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in its notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

Did the Commonwealth present a *prima facie* case for aggravated assault, robbery as a felony in the first degree, [REAP], and terroristic threats when the 79-year-old victim testified that the 19-year-old [Muhammad] repeatedly beat him, caused serious bodily injury, and shouted the word "kill" in the midst of the beating?

Commonwealth's Brief at 7.

The nature of the Commonwealth's issue implicates its burden of proof at a preliminary hearing. During a preliminary hearing, the Commonwealth must establish a *prima facie* case demonstrating that each element of the crimes charged is present and that sufficient probable cause exists that the defendant committed the offenses. **See Commonwealth v. Weigle**, 997 A.2d 306, 311 (Pa. 2010). The burden on the Commonwealth during the preliminary stage of criminal prosecution is not to prove the defendant's guilt beyond a reasonable doubt; rather, it is merely to put forth a *prima facie* case of the defendant's guilt. **See Commonwealth v. Huggins**, 836 A.2d 862, 866 (Pa. 2003). To satisfy its burden, the Commonwealth must establish that, if all evidence is accepted as true, then the trial judge would be warranted in allowing the case to be decided by jury. **See Commonwealth v. Karenty**, 880 A.2d 505, 514 (Pa. 2005).

At the preliminary hearing, the trial court must view the evidence in the light most favorable to the Commonwealth in determining whether the Commonwealth established a *prima facie* case, and give the testimony of the Commonwealth's witnesses the benefit of all reasonable inferences in its favor

which may be drawn from the testimony or other evidence the Commonwealth presents. ***See Commonwealth v. Nieves***, 876 A.2d 423, 424 (Pa. Super. 2005). The trial court may not consider the weight or credibility of the evidence presented during the preliminary hearing. ***See Commonwealth v. Hilliard***, 172 A.3d 5, 10 (Pa. Super. 2017) (holding that the trial court cannot determine credibility at the preliminary hearing).

When the Commonwealth challenges the dismissal of a charge at the preliminary hearing stage of the proceedings, the issue is viewed as a challenge to the sufficiency of the evidence. Our Supreme Court has held that "the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." ***See Karenty***, 880 A.2d at 513.

Turning to the charges in question, the Commonwealth initially contends that it presented a *prima facie* case for aggravated assault. A person commits aggravated assault when he or she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1).[3] Criminal attempt occurs when a person, with the

---

[3] There does not appear to be any dispute in this matter that the evidence presented by the Commonwealth at the preliminary hearing established that Muhammad acted either intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life. ***See*** 18 Pa.C.S.A. § 2702(a)(1). Rather, the only dispute appears to be
*(Footnote Continued Next Page)*

intent to commit a specific crime, does any act which constitutes a substantial step toward the commission of that crime. ***See*** 18 Pa.C.S.A. § 901(a). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death, or which causes serious, permanent, disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. This Court has found serious bodily injury to exist in cases of non-life-threatening injuries. ***See Commonwealth v. Cassidy***, 668 A.2d 1143, 1146 (Pa. Super. 1995) (affirming trial court's holding that "the trauma to the victim's wrist and back which resulted in both being placed in [braces and] casts for two months, was a 'protracted loss or impairment of the function' of those parts of the victim's body and thus constituted 'serious bodily injury'").

The Commonwealth contends that the injuries sustained by Mr. Jo constitute serious bodily injury because Mr. Jo had to wear a cast on his foot for three to four months, use a walker, and undergo rehabilitation and physical therapy. The Commonwealth also argues that Muhammad intended to inflict serious bodily harm when he grabbed Mr. Jo by the collar, spat at him, punched him five to six times in the face, dragged him to the ground, sat on top of him and punched him in the face, chest, and stomach repeatedly about

---

whether the evidence established that Mr. Jo suffered serious bodily injury. Accordingly, we need not address the additional elements of section 2702(a)(1).

forty times and kicked him five or six times all while saying the word "kill" multiple times. The Commonwealth maintains that "it is a natural and probable consequence that the repeated beating of a 79-year-old by a 19-year-old man would result in serious bodily injury." Commonwealth's Brief at 14. In the alternative, the Commonwealth asserts that the evidence was sufficient to show that Muhammad attempted to inflict serious bodily injury, regardless of whether he was successful in causing serious bodily injury.

The trial court considered the Commonwealth's challenge to its ruling on the motion to refile the charge of aggravated assault and determined that it lacked merit. The trial court reasoned that the Commonwealth did not establish a *prima facie* case for aggravate assault because Mr. Jo did not sustain serious bodily injury.

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the evidence presented by the Commonwealth was sufficient to establish a *prima facie* case for aggravated assault. At a minimum, the Commonwealth presented evidence that would permit a jury to find that Muhammad attempted to cause serious bodily injury to Mr. Jo by engaging in a prolonged physical attack of an elderly 79-year-old man while stating the word "kill." Indeed, Muhammad did not stop the beating until he was pulled from Mr. Jo by police. As the actions taken by Muhammad constitute a substantial step towards attempting to cause serious bodily injury to Mr. Jo, the evidence submitted by the Commonwealth was sufficient to establish a

*prima facie* case for aggravated assault. *See* 18 Pa.C.S.A. § 2702(a)(1); *see also* 18 Pa.C.S.A. § 901(a).

We further conclude that the Commonwealth's evidence, if accepted as true, was sufficient to permit a jury to find that Muhammad caused serious bodily injury to Mr. Jo. As explained above, the Commonwealth need not establish life-threatening injuries to establish serious bodily injury. Instead, the Commonwealth need only present evidence which would establish protracted loss or impairment of the function of any bodily member or organ. *See* 18 Pa.C.S.A. § 2301. Here, the Commonwealth presented evidence that Mr. Jo sustained a fractured foot which required him to wear a cast for three months and use a walker, as he could not bear weight on the foot. In our view, this constitutes a protracted loss or impairment of the function of a bodily member. *See Cassidy*, 668 A.2d at 1146; *see also Commonwealth v. Bradley*, 69 A.3d 253, 257 n.6 (Pa. Super. 2013) (holding that the fracture of a bone in the arm of a six-year-old child constitutes serious bodily injury). We therefore conclude that the Commonwealth's evidence sufficiently established that, as a result of Muhammad's assault, Mr. Jo sustained serious bodily injury. Accordingly, we reverse the trial court's order as it relates to the denial of the Commonwealth's motion to refile the charge of aggravated assault.

We next consider the Commonwealth's challenge to the denial of its motion to refile the charge of REAP. A defendant is guilty of REAP "if he

recklessly engages in conduct that places or may place another person in danger of death or serious bodily injury." **See** 18 Pa.C.S.A. § 2705. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. **See** 18 Pa.C.S.A. § 302(b)(3). The risk must be of a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. **Id**.

The Commonwealth argues that because it established a *prima facie* case for aggravated assault, it also established a *prima facie* case for the lesser-included offense of REAP. It further argues that the evidence presented demonstrates that Muhammad committed REAP by repeatedly punching a 79-year-old senior in the face. The Commonwealth argues that "Mr. Jo *did* suffer serious bodily injury and could have suffered even more serious bodily injury where [Muhammad] repeatedly punched a 79-year-old man." Commonwealth's Brief at 18.

The trial court determined that the Commonwealth did not establish a *prima facie* case for REAP because, despite Muhammad's actions, Mr. Jo was "never in danger or at risk of being in danger of death or serious bodily injury." **See** Trial Court Opinion, 9/29/21, at 7.

As explained above, we conclude that the Commonwealth established a *prima facie* case for aggravated assault, including the element of serious

bodily injury. REAP is a lesser-included offense of aggravated assault and where the evidence is sufficient to support a claim of aggravated assault it is also sufficient to support a claim of REAP. *See Commonwealth v. Smith*, 956 A.2d 1029, 1036 (Pa. Super. 2008) (*en banc*). Therefore, as the Commonwealth sufficiently established a *prima facie* case for aggravated assault, it necessarily established a *prima facie* case for REAP. *Id*. We therefore reverse the trial court's order as it relates to the denial of the Commonwealth's motion to refile the charge of REAP.

We next address the Commonwealth's challenge to the denial of its motion to refile the charge of terroristic threats. "A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to: . . . commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). Therefore, the Commonwealth must prove that: (1) the defendant communicated a threat to commit a crime of violence; and (2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror. *See In re B.R.*, 732 A.2d 633, 636 (Pa. Super. 1999). Neither the ability to carry out the threat nor the belief by victim that threat will be carried is an essential element of the crime. *Id*. Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security. *Id*.

Even a single verbal threat might be made in such terms or circumstances as to support the inference that the actor intended to terrorize or coerce. *Id*. Moreover, it is unnecessary for the defendant to specifically articulate the crime of violence which he intends to commit where the type of crime may be inferred from the nature of the statement and the context and circumstances surrounding the utterance of the statement. *Id*.

The Commonwealth argues it made a *prima facie* case for terroristic threats by providing sufficient evidence to establish each element of the charge. The Commonwealth points to Mr. Jo's testimony that Muhammad shouted the word "kill" as he repeatedly punched Mr. Jo. The Commonwealth contends that a reasonable inference of Muhammad's intent in shouting "kill" while he brutalized a 79-year-old man was that Muhammad was expressing a threat to kill him.

The trial court considered the Commonwealth's challenge to its ruling on the charge of terroristic threats and concluded that the Commonwealth failed to establish a *prima facie* case. The court reasoned that "there was nothing presented by the Commonwealth which indicated the purpose of [Muhammad] in any of his actions or words was to terrorize Mr. Jo." Trial Court Opinion, 9/29/21, at 7.

Here, when Muhammad's words and conduct are viewed in context, his utterance of the word "kill" while carrying out a prolonged physical attack on Mr. Jo could be interpreted as a threat to commit a crime of violence against

him.   Muhammad punched Mr. Jo fifty to sixty times in the face, and repeatedly punched and kicked him in the chest, lower abdomen, and foot, causing a fracture.   A jury could find that the use of the word "kill" coupled with Muhammad's conduct were intended to terrorize Mr. Jo.   **See Commonwealth v. Butcher**, 644 A.2d 174, 176 (Pa. Super. 1994) (holding that appellant's words and conduct constituted terroristic threat when he approached a woman alone in a parking lot, forcibly grabbed her and pushed his body up against hers, demanded a ride, and said "don't make me get physical").   Moreover, Muhammad's words and actions did indeed terrorize Mr. Jo.   **See** N.T., 1/21/20, at 31-32 (wherein Mr. Jo testified that "I was yelling the address of my store so that anybody who was passing by could call the police.  So[,] I was yelling help me, help me and that I was at 5219").   At the very least, Muhammad acted in reckless disregard of terrorizing Mr. Jo. **Id**.  We therefore reverse the trial court's order as it relates to the denial of the Commonwealth's motion to refile the charge of terroristic threats.

We lastly consider the Commonwealth's challenge to the trial court's order denying its motion to grade robbery as a tier 1 felony rather than a tier 2 felony.   The grading of a criminal offense is an issue of statutory interpretation which presents a pure question of law.  **See Commonwealth v. Stoppard**, 103 A.3d 120, 123 (Pa. Super. 2014).  Therefore, our standard of review is de novo and our scope of review is plenary.  **Id**.

The elements of robbery when graded as a tier 1 offense are met when the defendant "in the course of committing a theft, . . . inflict[s] serious bodily injury upon another; threaten[s] another with or intentionally puts [another] in fear of immediate serious bodily injury; [or] commits or threatens immediately to commit any felony of the first or second degree." 18 Pa.C.S.A. § 3701(a)(1)(i-iii). In contrast, the elements of robbery when graded as a tier 2 offense are met when the defendant "in the course of committing a theft, . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury." 18 Pa.C.S.A. § 3701(a)(1)(iv).

The Commonwealth argues that it established that the charge of robbery should be graded as a tier 1 felony because Muhammad inflicted serious bodily injury upon Mr. Jo during the course of committing a theft. The Commonwealth also contends that the evidence was sufficient to establish a *prima facie* case for robbery as a tier 1 felony because the robbery occurred while Muhammad committed or threatened to commit aggravated assault, which is a felony.

The trial court considered the Commonwealth's challenge to its ruling on the motion to regrade and determined that the crucial part of the analysis in deciding between tier 1 and tier 2 robbery in the present case is whether Muhammad inflicted "serious bodily injury" or merely "bodily injury" upon Mr. Jo. **See** Trial Court Opinion, 9/29/21, at 5. The trial court concluded that Mr.

- 13 -

Jo did not suffer serious bodily injury and was neither threatened with or in fear of imminent serious bodily injury. *Id*. (noting that Muhammad did not use a weapon in the attack). On this basis, the trial court concluded that the Commonwealth failed to present sufficient evidence to establish that the charge for robbery should be graded as a tier 1 felony. *Id*.

We conclude that the Commonwealth has satisfied its preliminary burden of establishing a *prima facie* case for robbery as a tier 1 felony. As explained above, the evidence presented by the Commonwealth at the preliminary hearing established that Mr. Jo sustained serious bodily injury. Therefore, the charge of robbery should be graded as a tier 1 offense pursuant to section 3701(a)(1)(i). We therefore reverse the trial court's order as it relates to the denial of the Commonwealth's motion to regrade the charge of robbery to a tier 1 felony.

Order reversed. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: <u>9/22/2022</u>