J-A24020-19

2020 PA Super 2

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                    :          PENNSYLVANIA
                                                    :
                        v.                          :
                                                    :
                                                    :
                                                    :
CHRISTINE CROSBY                          :
                                                    :
              Appellant                       :       No. 3193 EDA 2018

Appeal from the Judgment of Sentence Entered August 10, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  MC-51-CR-0011226-2018

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

OPINION BY DUBOW, J.:                                    Filed: January 2, 2020

Appellant, Christine Crosby, appeals from the August 10, 2018 Judgment of Sentence entered in the Philadelphia Court of Common Pleas following her conviction for Terroristic Threats.[1]  Upon careful review, we affirm.

The relevant procedural and factual history is as follows.  On April 30, 2019, after a phone conversation with an administrator at her son's high school, Appellant was arrested and charged with Terroristic Threats.

On August 10, 2018, Appellant was tried in municipal court.  At trial, the Commonwealth presented testimony from Corey Grice, an administrator at Northeast High School, and police officer Justin Hynes.  Appellant testified on her own behalf.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

Mr. Grice testified that he is an administrator at Northeast High School who is responsible for all student discipline. N.T., 8/10/18, at 6. He had spoken with Appellant approximately 10 to 15 times throughout the school year regarding her son, J.C., who had received approximately 10 suspensions. N.T., 8/10/18, at 6, 7, 10. On April 30, 2018, Appellant called Mr. Grice. *Id.* at 7-8. He recognized her voice from previous telephone conversations. *Id.* 10. Appellant called to discuss J.C.'s most recent suspension and inquire why the school had sent J.C. home that day. *Id.* at 9, 11. When Mr. Grice explained to Appellant the reasons for J.C.'s most recent suspension, Appellant responded that the school should focus on the drug dealers at the school instead of her son. *Id*. at 11. When Mr. Grice attempted to elicit the names of the drug dealers, Appellant responded that she is "not a snitch." *Id.*

Mr. Grice informed Appellant that it was the school policy that a parent or guardian had to come to the school in person to reinstate a student after any suspension and the school would not allow J.C. to attend until a parent reinstated him. *Id.* at 8, 11. Mr. Grice characterized Appellant at this point as "frustrated" and testified that "she kind of started swearing and cussing." *Id.* at 11, 16.

When Mr. Grice informed Appellant, once again, that she needed to come to the school in person to reinstate J.C., Appellant replied, "**I'll kill all you mother fuckers up there.**" *Id.* at 11-12, 16 (emphasis added). Mr. Grice told Appellant that she could not make statements like that. *Id.* Appellant repeated herself, saying "**I'll come up there and kill all of you**

**mother fuckers.**" *Id.* (emphasis added). Mr. Grice immediately hung up the phone and contacted the police. *Id.* at 12, 20-21.[2]

Officer Hynes testified that he went to Appellant's home on April 30, 2018. *Id.* at 25. When he arrived, Appellant asked him if he was there in regards to her conversation with Northeast High School earlier in the day. *Id.* Appellant also told Officer Hynes that she did not threaten the school. *Id.*

Appellant testified that she called the school to find out why her son's lunch detention turned into a suspension. *Id.* at 30. She stated that she spoke to an administrator who would not tell her why her son received disciplinary action but, instead, told her to come to the school to reinstate him. *Id.* at 30-31. Appellant testified that she called three times, and each time the administrator hung up on her. *Id.* at 31-33. Appellant explained that she was upset that the school was not giving her information about her son's detention and suspension, but denied making any threats to the school or having a conversation about drug dealers in the school. *Id.* at 31-32.

At the end of the trial, the municipal court judge found Appellant guilty and sentenced her to six months' reporting probation. On September 10, 2018, Appellant filed a Writ of Certiorari. On October 22, 2018, after hearing oral argument, the court of common pleas judge denied the Writ.

---

[2] Mr. Grice recalled that Mother hung up on him in the middle of the conversation, called back approximately five minutes later, and made both threats during the second phone conversation. *Id.* at 20.

- 3 -

Appellant filed a timely appeal. Both Appellant and the lower court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Was not the evidence insufficient for conviction on the charge of terroristic threats, as [Appellant] never communicated any threat to commit a crime of violence with the intent to terrorize another, and any statements that were made were the kind of spur-of-the-moment statements resulting from transitory anger that cannot sustain a conviction for this offense?

Appellant's Brief at 3.

Appellant avers that the Commonwealth's evidence was insufficient to sustain her conviction of Terroristic Threats. In particular, Appellant argues that she lacked a "settled intent to terrorize" because her statements were "spur-of-the-moment threats made as the product of transitory anger." Appellant's Br. at 7, 8. In support of this claim, Appellant asserts that the evidence demonstrated that she made the threatening statements in the course of a single, brief, and heated conversation without the intent to terrorize. *Id*. at 11, 13.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and

- 4 -

citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

The crime of making a terroristic threat is defined by statute as follows: "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another. . . ." 18 Pa.C.S. § 2706(a)(1).

To convict a defendant of Terroristic Threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citations omitted). The Commonwealth does not have to prove that the defendant had the ability to carry out the threat or that the threatened individual believed the defendant would carry out the threat, as neither is an element of the offense. *In re J.H.*, 797 A.2d 260, 262 (Pa. Super. 2002) (citation omitted). Rather, the statute seeks to prevent the psychological distress that follows from an invasion of another's sense of personal security. *Beasley*, 138 A.3d at 46.

The Official Comment to Section 2706 explains: "The purpose of th[is] section is to impose criminal liability on persons who make threats which

seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S. § 2706 cmt. *See also Commonwealth v. Tizer*, 684 A.2d 598, 600 (Pa. Super. 1996) (noting that the statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute).

However, this Court has held that just because a person is angry does not render them incapable of forming the intent to terrorize. *In re J.H.*, 797 A.2d at 263. Rather, "this Court must consider the **totality of the circumstances** to determine whether the **threat was a result of a heated verbal exchange or confrontation**." *Id.* (emphasis added).

Here, the trial court found that when Appellant threatened Mr. Grice, she was not arguing with Mr. Grice and the conversation was not heated. Rather, Appellant was merely frustrated and had the chance to reflect on her threat before she repeated it. The trial court opined:

> [Neither] Appellant nor Mr. Grice testified that the phone conversation was a heated one. In fact, Appellant testified [that] she was frustrated [that] no one would tell her more [information except] that she needed to come to the school and reinstate her son. Appellant did not testify that her [threatening] statement was in response to a statement made to her during an argument. . . Appellant had the chance to reflect on her statement when Mr. Grice told her that she could not threaten to kill everyone at the school, but Appellant stood by her statement by repeating it. Finally, Officer Hynes testified [that] Appellant stated [that] she knew her earlier conversation with Northeast High School is what brought him to her home. Under the totality of the circumstances, we find Appellant made the statement and made the statement with the intent to terrorize. Appellant has a history of interaction with [] Mr. Grice and his staff.

Trial Ct. Op., filed 2/12/19, at unpaginated 4-5.

Following our review, we agree with the trial court that the Commonwealth presented sufficient evidence from which the lower court could reasonably find that the Commonwealth had proven the requisite elements of the Terroristic Threats charge. The evidence elicited at trial, when viewed in the light most favorable to the Commonwealth as verdict-winner, indicates that Appellant's repeated threats were not spur-of-the-moment threats made as a result of anger. Rather, Appellant made her threats deliberately during a phone conversation where she was inquiring about her son's tenth suspension from school. Although Appellant was frustrated during the phone conversation, she was not irate when she threatened Mr. Grice. Also, Appellant had a chance to reflect on the serious nature of making a threat against the school, and chose to make the threat again. Therefore, it was reasonable for the lower court to conclude that Appellant's threats were not spur-of-the moment threats made because of anger, but rather deliberate threats intended to terrorize Mr. Grice as well as the school.

To support her claim that the evidence was insufficient to prove that Appellant had an intent to terrorize, Appellant favorably compares her case to **Commonwealth v. Sullivan**, 409 A.2d 888 (Pa. Super. 1979), and

*Commonwealth v. Walls*, 144 A.3d 926 (Pa. Super. 2016).[3] Both cases are factually distinguishable and, thus, do not support Appellant's argument.

In **Sullivan**, the defendant telephoned the State Police Barracks in a "very angry and not rational" state, and asked the police to send a trooper to investigate his claim that the Sheriff of the county had assaulted the defendant's father. 409 A.2d at 888-89. The defendant, even "angrier[,]" telephoned the barracks a second time and said, "If you don't want to send anybody down here, I have a .30-30 rifle and I'll come up there and blow that son of a bitch's head off." **Id**. at 888-89. The next morning the defendant encountered the Sheriff on the street by chance and during a "loud shouting match[,]" the defendant again threatened to kill the Sheriff. **Id.** at 889. The defendant was convicted of two counts of Terroristic Threats. On appeal, this Court reversed, concluding that the defendant's initial threat was the result of his angry and agitated state of mind and the second threat was the "emotional product of a chance meeting" and a "mouth battle." **Id.** at 889. Accordingly, the defendant did not have the requisite intent to terrorize required for conviction under Section 2706. **Id.** at 889-90.

_____

[3] Appellant also cites **Commonwealth v. Anneski**, 525 A.2d 373 (Pa. Super. 1987), to support her argument that the Commonwealth presented insufficient evidence to convict her of Terroristic Threats. **Anneski** pertains to the weight of the evidence rather than the sufficiency of the evidence, and is, thus, not relevant to Appellant's claim.

In **Walls**, the defendant encountered the Assistant District Attorney ("ADA"), who had prosecuted his case, in a shopping mall by chance. 144 A.3d at 930. The defendant screamed at the ADA that she sent him to jail for a crime he did not commit and threw his hat. **Id.** As others restrained the defendant, he yelled that the ADA caused his grandmother's death and that the ADA should be next. **Id.** This Court concluded that there was insufficient evidence that the defendant intended to terrorize the ADA and, instead, found that "the evidence only supports the conclusion that [the defendant] made a spur-of-the-moment threat as the result of anger during a random confrontation at a local shopping mall." **Id.** at 938.

We can easily distinguish **Sullivan** and **Walls** from the instant case because, in those cases, both defendants made threatening statements during heated and angry encounters. Here, unlike the defendants in **Sullivan** and **Walls**, when Appellant threatened Mr. Grice she was not arguing with Mr. Grice and the conversation was not heated. Consequently, she did not make spur-of-the–moment threats as a result of a heated and angry verbal exchange or confrontation. Rather, Appellant's statements were deliberate threats made with the intent to terrorize.

Moreover, this Court would be remiss if it did not acknowledge that the purpose of the Terroristic Threats statute "is to impose criminal liability on persons who make threats **which seriously impair personal security or public convenience**" and a threat to kill the staff and students at a school

most certainly impairs both. **See** 18 Pa.C.S. § 2705 cmt (emphasis added).

Appellant is, therefore, not entitled to relief on this issue.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/2/2020