J-A22026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　：　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　：　　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　：
　　　　　　　v.　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　：
GEORGE ZAMBELLI　　　　　　　　　：
　　　　　　　　　　　　　　　　　　：
　　　　　　　Appellant　　　　　　　：　　No. 8 WDA 2022

Appeal from the Judgment of Sentence Entered December 3, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004723-2020

BEFORE:　OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:　　　　　　**FILED: OCTOBER 27, 2022**

Appellant, George Zambelli, appeals from the Judgment of Sentence entered in the Allegheny Court of Common Pleas on December 3, 2021, following his convictions for Terroristic Threats, Stalking, and Harassment. Appellant challenges the sufficiency of the evidence.  Upon review, we affirm.

The relevant factual and procedural history, as gleaned from the trial court's Pa.R.A.P. 1925(a) Opinion, is as follows.  Michael Poulous ("Victim") is a police officer who has a biological daughter with his ex-paramour Rachel Haven ("Rachel").  At the time of trial, Appellant was Rachel's paramour. Since 2014, Victim has been the target of unwanted phone calls and text messages from Appellant, and this is the seventh court case in which Appellant is alleged to have committed harassing behavior towards Victim.  Due to their

_____

[*] Retired Senior Judge assigned to the Superior Court.

interactions over the years, Victim is familiar with Appellant's voice. N.T. Trial, 9/8/21, at 9-12, 42.

On March 7, 2020, Victim received a phone call from "Rachel 12 Haven," which is Rachel's contact name in Victim's cellphone. Victim answered, saying, "Hey, Rach." Victim heard Appellant respond, "Where you at?" Victim immediately identified Appellant as the caller and heard some wind in the background before Appellant hung up. Victim called the number back and Rachel answered, stating she was at a pharmacy with their daughter and had not been in contact with Appellant. *Id.* at 12-14, 18, 24, 30.

Approximately 30 minutes later, Victim received another phone call from "Rachel 12 Haven." Victim answered, and heard Appellant say, "Where you at?" Victim responded identifying Appellant by name and said, "Where you at, George?" Victim and Appellant exchanged a few words, and Appellant told Victim that he wanted to meet him "down at the fields in Warrendale" and somewhere dark. Victim responded, "George, you hide behind your phone all the time. You are not going to meet me down there." *Id.* at 14-15, 24-25.

After Victim and Appellant bantered back and forth, Appellant said, "Come on down . . . I want to kick your ass." Victim responded, "George, you better look in the mirror . . . You are 5 foot 4, 140 pounds . . . I'm 6'2", 225." Appellant then stated that he was a Marine and told Victim that he was specifically a "machine gunner in the Marines." Appellant also commented that Victim had "never taken a life before." Victim responded and told

Appellant that he was an "embarrassment to the Marines and his family." *Id.* at 15-16, 28.

Appellant continued to ask Victim to meet him and eventually said, "When I smell blood, I keep going." Appellant next made derogatory remarks about Victim's house, remarked that Victim was angry because Appellant was dating Rachel, and professed that Victim's daughter calls Appellant "daddy." *Id.* at 17-18.

Victim unsuccessfully drove around for approximately 25 minutes attempting to find a witness to identify Appellant's voice while Appellant was still on the phone. When Victim finally drove to Rachel's house, Appellant hung up. A few minutes after Victim arrived at Rachel's house, Rachel received several phone calls from Appellant. Victim reported the incident to police the next day, who subsequently arrested Appellant and charged him with the above offenses.

On September 8, 2021, the court held a non-jury trial. Victim testified to the above-stated events. Additionally, Victim conceded that he is bigger than Appellant and has better physical skills. However, Victim also testified that he is concerned that Appellant is a Marine, has access to guns, knows where Victim lives, and that this has been going on since 2014 and is "coming to a head." *Id.* at 23. Victim expressed concern for his safety, Rachel's safety, and his daughter's safety. Victim also testified that he was aware that Appellant had an arrest history and committed violent acts such as smashing a windshield and assaulting Rachel in front of Victim's daughter.

At the conclusion of the trial, the trial court convicted Appellant of Terroristic Threats, Stalking, and two counts of Harassment. On December 3, 2021, the court sentenced Appellant to concurrent five-year terms of probation on the Terroristic Threat and Stalking counts, with the first year to be served on electronic monitoring. Additionally, the court sentenced Appellant to time-served for the misdemeanor Harassment count, and no further penalty for the summary Harassment count.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Was the evidence sufficient to prove that Appellant made a threat that was intended to terrorize [] Victim?

2. Was the evidence sufficient to prove that Appellant's conduct was intended to place [] Victim in fear of bodily injury or to cause him substantial emotional distress?

Appellant's Br. at 4.

"A claim challenging the sufficiency of the evidence is a question of law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on

circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

In his first issue, Appellant avers that he did not exhibit the requisite intent to terrorize with his words. Appellant's Br. at 10. Specifically, Appellant argues that his statement, "Come on down . . . I want to kick your ass," was "barely a threat" because it was made in the course of anger and its fulfillment was conditioned on Victim proceeding to the specified location. *Id.* Upon review, we disagree.

The crime of making a terroristic threat is defined by statute as follows: "[a] person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to [] commit any crime of violence with intent to terrorize another. . . ." 18 Pa.C.S. § 2706(a)(1).

To sustain a conviction for Terroristic Threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citations omitted). "The Commonwealth does not have to prove that the defendant had the ability to carry out the threat or that the threatened individual believed the defendant would carry out the threat, as neither is an element of the offense."

- 5 -

*Commonwealth v. Crosby*, 226 A.3d 104, 107 (Pa. Super. 2020), *appeal denied*, 236 A.3d 1056 (Pa. 2020). Rather, the statute seeks to prevent the psychological distress that follows from an invasion of another's sense of personal security. *Beasley*, 138 A.3d at 46.

The Official Comment to Section 2706 explains: "The purpose of th[is] section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S. § 2706 cmt. *See also Commonwealth v. Tizer*, 684 A.2d 598, 600 (Pa. Super. 1996) (noting that the statute is not meant to penalize spur-of-the-moment threats arising out of anger during a dispute).

However, this Court has repeatedly held that just because a person is angry does not render them incapable of forming the intent to terrorize. *In re J.H.*, 797 A.2d 260, 263 (Pa. Super. 2002); *Crosby*, 226 A.3d at 107. "Rather, this Court must consider the totality of the circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Crosby*, 226 A.3d at 107 (citation omitted, emphasis removed).

Here, the trial court credited Victim's testimony that Appellant urged Victim to meet him "somewhere dark" because he wanted to "kick his ass," informed Victim that he was a "machine gunner in the Marines," and implied that he had, in fact, killed someone when he stated that Victim had "never

- 6 -

taken a life before." Trial Ct. Op. at 13. The trial court also credited Victim's testimony that Appellant stated, "when I smell blood, I keep going." *Id.*

In its Opinion, the trial court emphasized that Appellant "spoofed" Rachel's phone to make it more likely that Victim would answer, and threatened Victim throughout the call, while implying that he was a killer. The trial court opined:

> When viewed in context, and as a whole, [Appellant] threatened to assault an individual whom he knew to be a police officer and throughout that call intimated that he was a killer. Whether [Victim] believed that any threat of violence would materialize is irrelevant as is the question of whether [Victim] was frightened by any threat. [Appellant] did not make these statements in jest to a friend, nor were these statements made spontaneously in the heat of the moment to some random stranger at a bar.
>
> To the contrary, [Appellant] was yet again intending to intimidate, terrorize, and harass an individual whom he had been fixating on for six (6) years. The threats were made to a police officer who had already taken him to court six (6) times, which demonstrates [Appellant]'s absolute disregard for resulting consequences and shows that his intent was to cause psychological distress and invade [Victim]'s personal sense of security. Furthermore, [Appellant] made the conscious decision to call [Victim] not just once, but twice within a thirty (30) minute timeframe on the evening in question, and he had the presence of mind to spoof the call both times, which all highlights his intent to terrorize.

*Id.* at 13-14 (citations omitted).

Following our review, we agree with the trial court that the Commonwealth presented sufficient evidence to prove the crime of Terroristic Threats. The evidence elicited at trial, when viewed in the light most favorable to the Commonwealth as verdict-winner, indicates that Appellant's repeated threats were not spur-of-the-moment threats made as a result of anger.

Rather, Appellant made his threats during not one, but two, phone calls where he deliberately spoofed Rachel's phone. Moreover, the court heard evidence that this was a pattern of behavior over a period of six years. During these most recent phone calls, Appellant threatened to assault Victim, stated that he knew how to use a machine gun, and implied that he had previously killed someone. Given these facts in evidence, it was reasonable for the trial court to conclude that Appellant's threats were deliberate threats intended to terrorize Victim.

To support his argument that Appellant did not have an intent to terrorize, Appellant cites **Commonwealth v. Sullivan**, 409 A.2d 888 (Pa. Super. 1979), **Commonwealth v. Kidd**, 442 A.2d 826 (Pa. Super. 1982), **Commonwealth v. Anneski**, 525 A.2d 373 (Pa. Super. 1987), all cases where this Court concluded that the evidence was not sufficient to support a conviction Terroristic Threats because the threats were made in the spur of the moment during transitory anger. These cases are easily distinguished and, thus, do not support Appellant's argument.

In **Sullivan**, the appellant called police to report that his father had been assaulted by the county sheriff and threatened to "blow that son of a bitch's head off" during two heated interactions. In **Kidd**, police arrested the appellant for public drunkenness and, while handcuffed at hospital, the agitated appellant shouted obscenities and threatened to kill police officers in the emergency room. In **Anneski**, a mother who thought her child had been struck by her neighbor's car engaged in a heated argument with the neighbor

and threatened to shoot the neighbor if the neighbor tried to run her kids over again.

Unlike the appellants in the above-cited cases, Appellant's threats were not made in the spur of the moment during transitory anger. Rather, Appellant displayed pre-meditation by "spoofing" Rachel's phone number. Moreover, Appellant was not agitated or provoked, and Appellant and Victim were not engaged in a heated and spontaneous argument. Accordingly, we remain unpersuaded by Appellant's sufficiency argument pertaining to his Terroristic Threats conviction.

In Appellant's second issue, he challenges his conviction for Stalking. Appellant concedes that Victim was upset by the phone calls but argues that the evidence does not demonstrate that Victim suffered substantial emotional distress or that Appellant intended to cause Victim that level of stress. Appellant's Br. at 17. Appellant also argues that he did not have an intent to create a reasonable fear of bodily injury, and Victim was not afraid as evidenced by his responses. *Id.* at 16-17. Finally, Appellant argues that Victim could have hung up at any time and that it was Victim who prolonged the phone conversation. *Id.* at 17.

A person commits the crime of stalking when the person "engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa.C.S. § 2709.1(a)(2). The

statute defines "emotional distress" as a "temporary or permanent state of mental anguish." *Id.* at § 2709.1(f). "Course of conduct" is defined as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes, lascivious, threatening, or obscene words, language, drawings, caricatures or actions, either in person or anonymously." *Id.*

Our review of the evidence in the light most favorable to the Commonwealth as the verdict winner reveals that the Commonwealth presented sufficient evidence to establish that Appellant intended to cause substantial emotional distress. Appellant repeatedly contacted Victim over a number of years, "spoofed" Rachel's phone, stated that he was "a machine gunner in the Marines," implied that he had killed someone, and called Victim not once, but twice on the day in question.

Moreover, Appellant's arguments regarding Victim's reactions fail. The statute does not require a victim to experience substantial emotional distress or fear of bodily injury; rather, it requires the Commonwealth to demonstrate that a defendant intended to cause such distress or fear. *See* 18 Pa.C.S. § 2709.1(a)(2). In any event, Appellant's claims that the Commonwealth did not present evidence that Victim experienced substantial emotional distress are belied by the record. On the contrary, Victim testified that he was concerned and fearful for the safety of himself, Rachel, and his daughter because Appellant had access to guns; Appellant knew where Victim lived and

worked; Appellant knew where Victim's daughter lived; and things were "coming to a head" after several years of harassment. N.T. Trial at 23.

In conclusion, upon review of the record, and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the Commonwealth presented sufficient evidence to convict Appellant of both Terroristic Threats and Stalking.

Judgment of Sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/27/2022