J-S45034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE DASAWN FULLER | : | |
| | : | |
| Appellant | : | No. 411 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 26, 2020
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0003250-2019

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED MARCH 17, 2025**

Andre Dasawn Fuller appeals from the judgment of sentence entered for his convictions for two counts of terroristic threats and one count of harassment.[1] Fuller challenges the sufficiency of the evidence and the court's decision not to instruct the jury on spur-of-the-moment statements. We affirm.

We have previously summarized the factual history of this case as follows:

> [Fuller] and Teal Rishel are the parents of one son, who was born in 2013. [Fuller] and Ms. Rishel have not been romantically involved for many years; however, Ms. Rishel made an effort to keep in contact with [Fuller] so they could co-parent their son. This included Ms. Rishel occasionally meeting [Fuller] in-person and, more often, by communicating by phone and text message.

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1) and 2709(a)(1), respectively.

In 2019, [Fuller] began to threaten Ms. Rishel over the phone and through text messages by accusing her of having relationships with other men and angrily insisting that no one would ever love her the way he did.

In September 2019, Ms. Rishel began a relationship with William Santos. [Fuller] complained to Ms. Rishel that he did not want anyone "playing daddy" to his son. [Fuller] made efforts to rekindle his relationship with Ms. Rishel; Ms. Rishel rebuffed his efforts, causing [Fuller] to become "angry, manipulative, and threatening." For instance, [Fuller] referred to Mr. Santos as "playing daddy," and warned Ms. Rishel that "[r]eal get put down for that[.]" [Fuller] also informed Ms. Rishel that he had acquired a photograph of Mr. Santos's car and informed her that he would be "looking for the blue car."

[Fuller] also contacted Mr. Santos directly, warning him that "Nigga [] get put down over this type of shit, and I'm all the way like that[.]" Mr. Santos inferred from this that [Fuller] was threatening to kill him. Although Mr. Santos initially tried to reason with [Fuller], eventually he blocked [Fuller] on Facebook and avoided further contact with him.

In approximately September 2019, [Fuller] sent a photograph of a gun to Ms. Rishel and stated, "I got one too[,] but I use mine." [Fuller] also admitted to sending her a longer message stating, "If that's who you want to die with[,] then so be it. But I promise you like I promised Chili I'm gonna get him Teal. I'm coming." Also around this time, [Fuller] warned Ms. Rishel that he would be "sitting outside at night waiting and watching." These messages threatening to kill Ms. Rishel and people she loved "terrified" her.

\*\*\*

[Fuller] also testified, denying that any of his statements to Ms. Rishel or Mr. Santos had been threats. He claimed, instead, that he had contacted Ms. Rishel and Mr. Santos to get to know Mr. Santos and to "defuse" an "explosive situation" and be a good father to his son. [Fuller] asserted that he made his statement to Ms. Rishel about being able to "use" his gun in response to Ms. Rishel threatening him. According to [Fuller], Ms. Rishel had told him that she had a gun and warned [Fuller] that she would use it if [Fuller] tried to "do anything to us."

- 2 -

[Fuller] conceded that he had been angry at Mr. Santos and Ms. Rishel about the possibility of Mr. Santos replacing [Fuller] as his son's father. He explained the process of typing and sending text messages to the victims. With respect to the Facebook messages he sent to Ms. Rishel, he described the deliberative process of logging into Facebook, finding her Facebook page, typing his message, and hitting "send," knowing that she would receive the message.

*Commonwealth v. Fuller*, No. 169 MDA 2021, 2022 WL 152482 at *1-2 (Pa.Super. filed Jan. 18, 2022) (unpublished mem.) (footnotes omitted).

Counsel asked the court to instruct the jury on spur-of-the-moment statements based on *Commonwealth v. Hudgens*, 582 A.2d 1352 (Pa.Super. 1990); *See* N.T., Trial, 1/14/20, at 88. The court denied counsel's request, finding that "there is not a factual basis for it." *Id.* The court explained its reasoning for denying the request as follows:

I reviewed the [*Hudgens*] case. And looking at the law in that case and the facts in that case, it's my opinion that spur-of-the-moment statement is not an issue in this case. There was no evidence that there was a spur-of-the-moment statement. There was clearly evidence that [Fuller] typed this message, sent it electronically, made a consci[ous] decision to send those messages. It wasn't a spur-of-the-moment situation where he said something, blurted something out. He took the time to type it and send it to the alleged victim in this case. So the [c]ourt will deny your point for charge, that there is not a factual basis for it.

*Id.*

The jury found Fuller guilty of the above-referenced offenses and the court sentenced him to consecutive terms of 18 to 36 months of incarceration for terroristic threats and a fine for harassment. This timely appeal followed.[2]

Fuller raises the following issues:

1. Whether the Trial Court erred by refusing to issue a jury instruction regarding spur-of-the-moment statements requested by the defense?

2. Whether insufficient evidence existed to prove beyond a reasonable doubt that Mr. Fuller's statements to Ms. Rishel were not spur-of-the-moment statements that are not criminalized under the Terroristic Threats statute?

3. Whether insufficient evidence existed to prove beyond a reasonable doubt that Mr. Fuller had the intent to terrorize Mr. Santos when the alleged threats were made?

Fuller's Br. at 4 (suggested answers omitted).

Fuller claims that the trial court erred in denying his request for an instruction on spur-of-the-moment statements for the crime of terroristic threats. He alleges that the evidence showed that his statements to "Rishel were made during an argument over a sexual relationship and how to co-parent a child." *Id.* at 14. He notes that he testified that he sent the picture of a gun to Rishel after Rishel threatened that Santos had a gun and that they would use the gun. Fuller maintains that he was prejudiced by the court's

_____

[2] Fuller's direct appeal rights have been reinstated three times, this being the third. This time, the lower court granted a timely Post Conviction Relief Act petition and reinstated Fuller's post-sentence and direct appeal rights due to prior counsel's ineffectiveness. **See** Opinion Pursuant to 1925(a)(1), filed 5/15/24 at 2 (unpaginated); Order, filed 11/28/23.

decision because "it removed Mr. Fuller's best means of contesting this case before the jury." *Id.* Without the instruction, he claims that "the jury was only left to determine if they believed the statements were threats." *Id.* Fuller points out that the court concluded that the spur-of-the-moment jury instruction did not apply because Fuller "made a conscious decision to send those messages." However, Fuller maintains that this conclusion "ignores the fact that text messages can be sent in mere seconds" and the court's finding amounts to a narrow interpretation that only oral statements are considered spur-of-the-moment statements. *Id.* at 16. Fuller also likens his case to *Commonwealth v. Anneski*, 525 A.2d 373 (Pa.Super. 1987).

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Green*, 273 A.3d 1080, 1084 (Pa.Super. 2022) (citation omitted). When there is evidence to support instructions on a defense, instructions are warranted. *See Commonwealth v. Yachimowski*, 232 A.3d 861, 865 (Pa.Super. 2020); *Commonwealth v. Borgella*, 611 A.2d 699, 700 (Pa. 1992) ("[a] defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor") (citation omitted).

The crime of terroristic threats "was not designed to penalize spur-of-the-moment threats which arise out of anger in the course of a dispute."

- 5 -

***Hudgens***, 582 A.2d at 1358. Rather, it is meant to criminalize "threats which seriously impair personal security or public convenience." 18 Pa.C.S.A. § 2706, comment. "When two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger." ***Commonwealth v. Walls***, 144 A.3d 926, 937 (Pa.Super. 2016).

For example, in ***Anneski***, the appellant was charged and convicted of terroristic threats. "Anneski had told her neighbor if the neighbor 'tried to run over her kids anymore at the bus stop' she, Anneski, would bring a gun and use it." ***Anneski***, 525 A.2d at 374. On appeal, Anneski challenged the sufficiency of the evidence. This Court determined that the evidence was insufficient to support the conviction. We noted that the crime of terroristic threats was "not intended . . . to penalize mere spur-of-the-moment threats which result from anger." ***Id.*** at 376 (citation omitted). We considered the surrounding circumstances, namely that Anneski's statement was made after Anneski's neighbor told her that she would hit Anneski's "children again with her car if they obstructed her vehicle's passage." ***Id.*** As such, we determined that the circumstances did not suggest that Anneski intended to terrorize her neighbor but instead was a "spur of the moment threat." ***Id.***

Yet, there are also circumstances when a threat is made without provocation or confrontation, where we have held that such a statement does not amount to a spur-of-the-moment threat. ***See Commonwealth v. Demulter***, 314 A.3d 934, 938 (Pa.Super. 2024), *appeal denied*, 325 A.3d 452

(Pa. 2024) (concluding statement was not spur-of-the-moment where appellant threatened to kill her neighbor as the neighbor walked past appellant's house and neighbor had not spoken with appellant); **Commonwealth v. Crosby**, 226 A.3d 104, 108 (Pa.Super. 2020) (appellant's statement to kill school administrator and others during phone conversation with school administrator while inquiring about her son's suspension was not a spur-of-the-moment threat).

Here, the trial court determined that "[t]here was no evidence that the statements made by [Fuller] . . . were made on the spur of the moment." Rule 1925(a) Op. at 4 (unpaginated). We agree. The evidence was of a series of text messages over a period of time. Fuller sent a text threatening that he had a gun and would use it, sent Rishel a photograph of a gun, and sent another referring to Rishel's boyfriend when messaging Rishel "[i]f that's who you want to die with then so be it." **See** N.T., Trial, at 32-33, 35-37. As such, the trial court committed no abuse of discretion or error of law in denying Fuller's request.

Fuller's remaining issues challenge the sufficiency of evidence for his convictions for terroristic threats. He claims that there was insufficient evidence of his intent to terrorize Rishel and Santos. He argues that his statements "resulted from transitory anger" and therefore "did not establish a settled purpose to carry out the threat or to terrorize Ms. Rishel." Fuller's Br. at 17. He states that he messaged a picture of a firearm to Rishel because she first threatened him with a firearm. **See id.** at 18. Regarding his threats

towards Santos, Fuller states that Santos was not afraid and notes that Santos only viewed Fuller's message about getting put down as threatening "because Mr. Santos heard that language used in a threatening manner in a movie." *Id.* at 20.

"We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Crosby*, 226 A.3d at 107 (citation omitted). The Commonwealth may sustain its burden "wholly on circumstantial evidence" and the fact finder "is free to believe all, part, or none of the evidence." *Id.* (citation omitted).

The crime of terroristic threats occurs "if the person communicates, either directly or indirectly, a threat to commit any crime of violence with intent to terrorize another." 18 Pa.C.S.A. § 2706(a)(1). As such, the Commonwealth may sustain its burden where it proves beyond a reasonable doubt that "1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa.Super. 2016) (citation omitted). "Neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime." *Commonwealth v. Kline*, 201 A.3d 1288, 1290 (Pa.Super. 2019) (alteration removed, citation omitted).

As explained above, Section 2706 is not meant "to penalize mere spur-of-the-moment threats which result from anger." **Anneski**, 525 A.2d at 376. However, "being angry does not render a person incapable of forming the intent to terrorize." **Commonwealth v. Sexton**, 222 A.3d 405, 418 (Pa.Super. 2019) (citation omitted). We "must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." **Id.** (citation omitted).

Viewing the facts in the light most favorable to the Commonwealth, we conclude that the evidence was sufficient. Rishel testified that Fuller threatened to kill her and sent her a picture of a gun stating that he uses it. Santos testified that Fuller texted him about "get[ting] put down" and that he understood this as a threat because "[i]t's, like, putting a dog down in the backyard." **See** N.T., Trial, at 51. While Fuller claims that Santos was not afraid, Santos's belief about whether Fuller's threat would be carried out is not an "essential element of the crime." **Kline**, 201 A.3d at 1290. Additionally, Fuller's anger towards Rishel did not render him incapable of forming the intent to terrorize Rishel and Santos. Considering the totality of the circumstances, Fuller's threat was made with the intent to terrorize. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>03/17/2025</u>